PERRY *v.* WRIGHT.

Feb. 23, 1953

No. 38686          21 Adv. S. 60          63 So. 2d 40

*Brunini, Everett, Grantham & Quinn,* for appellant.

654

*Dent, Ward & Martin,* for appellee.

Etheridge, J.

This case involves a controversy over a boundary line, but singularly enough, each party is denying that he owns the strip of land in controversy.

Appellant Robert J. Perry filed a bill of complaint in the Chancery Court of Warren County against appellee Charlie R. Wright. It was alleged that Perry owned a lot in the City of Vicksburg immediately to the north of lots owned by Wright; that upon defendant's north line adjacent to complainant's property there was constructed more than 25 years ago a concrete wall 6 to 7 inches thick, and varying in height from 4½ to 6 feet 9 inches; that in March, 1949, the wall bulged northward and collapsed upon Perry's property; that much of it still hangs at a precarious angle over Perry's property, serving as a continuing danger to persons and property; that the wall in this condition is a dangerous nuisance, a continuing trespass, and should be abated. Hence complainant prayed for an injunction prohibiting the continuance of the nuisance and trespass, and commanding the defendant to remove the wall from complainant's property. The answer of defendant Wright denied that the wall was upon Wright's property as to the eastern two-thirds of it, and averred that that part of the wall was the complainant's wall, located wholly upon complainant's land. The answer averred that the wall served to afford lateral support to defendant's land. By cross bill it was charged that the overhanging, half-collapsed wall was a nuisance, and prayed the court to direct Perry to immediately restore the wall and the earth in the original conditions existing before the wall collapsed. Cross-defendant traversed those averments.

After a hearing at which both complainant and defendant testified and each party introduced a surveyor to support their positions, the chancery court executed a decree which found that the portion of the concrete wall which had collapsed was entirely upon the lands of the complainant Perry and that its condition was a nuisance and created a danger to the occupants of complainant's property and to defendant's property. Complainant's bill was dismissed, and he was directed to remove at his expense the eastern 88 feet of the concrete

wall, or so much of it as is necessary to abate the nuisance.

Appellant argues that this decree is against the overwhelming weight of the evidence and is against the physical facts as testified to and as evidenced by certain photographs in the record. We have considered carefully the evidence, and have, concluded that it was ample to support the decree below. Without lengthening this opinion by considering the evidence in detail, several factors particularly support the chancellor's conclusions. ██ He was warranted in finding, as he apparently did, that the survey of Polk, who testified for the defendant, correctly located the property line, and in not accepting the survey of Eustis, who testified for appellant. The Eustis survey was based upon a starting point of a certain iron pin which Eustis found south of the curb on Arthur Street, which he thought was the northeast corner of the Perry lot. From that pin he went south 63.2 feet and then measured the line dividing the parties' lands by turning at right angles. He did not verify the correctness of the location of the iron pin as being the true northeast corner of the Perry property. It was not checked against other established points in the Vicksburg survey. The trial court under such circumstances was justified in concluding that the starting point of the Eustis survey was not adequately established as correct. Burton v. Buttler, 107 Miss. 344, 65 So. 459 (1914); compare Boyd v. Durrett, 62 So. 2d 319 (Miss. 1953). Nor did Eustis otherwise verify the boundary line. On the other hand, Polk's survey, which the trial court apparently accepted, did not rely upon this iron pin, because Polk testified that in view of the changes in the width of Arthur Street, the pin was not a reliable starting point. Hence Polk authenticated his lines with that of other property owners in the area.

Moreover, Polk testified that in making a survey of the property in 1947, considerably before this action was instituted in June, 1950, he ascertained that the concrete

wall at its eastern extremity was north of the north face of the garage. The north side of the garage was conceded to be the north line of Wright's property. Wright also testified that in 1943 when he bought and moved upon his land, the concrete wall was north of the north face of the garage. This testimony was not contradicted. The chancellor could well have concluded from this testimony and from the photographs that the north side of the garage did not rest upon the concrete wall, but that it rested upon brick pillows which have since collapsed and in part upon the flanges protruding south of and from the concrete wall. ▮▮ Without reviewing further the evidence, we think that these and other circumstances amply warranted the chancellor's finding in favor of the appellee.

Affirmed.

*McGehee, C. J.,* and *Lee, Kyle* and *Arrington, JJ.,* concur.