VERTIE HAKANSON, APPELLANT, v. ELIZABETH B. MANDERS, APPELLEE.

63 N. W. 2d 436

Filed March 19, 1954. No. 33472.

*Charles A. Fisher,* for appellant.

*Albert W. Crites,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a suit brought under section 34-301, R. R. S. 1943, to establish the boundary line between Lots 16 and 17, Block 8, Original Town of Chadron, Nebraska. The defendant denied plaintiff's right to any relief under the foregoing section, asserted that the boundary line as shown by the recorded plat and the calls of the respective deeds of the parties was the true line, alleged that defendant and her predecessors in title have been in open, notorious, continuous, hostile, uninterrupted, and adverse possession of Lot 17 as platted for more than 50 years, and prayed that title to Lot 17 be quieted and confirmed in her as against the plaintiff. The trial court found for the defendant, and plaintiff appeals.

Across the north end of Block 8 there are 13 lots facing north on Second Street which are numbered 9 to 21 from west to east. The plaintiff Hakanson is the owner of Lot 16, and the defendant Manders is the

owner of Lots 17, 18, and the west 7 feet of Lot 19. The plaintiff acquired her title through Thomas B. Augustine, who became the owner on May 23, 1925. Plaintiff acquired title from Augustine on October 16, 1943. The defendant acquired the title to Lots 17, 18, and the west 7 feet of Lot 19 from Stella Muzzey on March 11, 1949. Stella Muzzey acquired her title to Lots 17 and 18 from Roy Hampton on May 31, 1944, the latter having been the owner since 1925.

This action was brought by the plaintiff under section 34-301, R. R. S. 1943, for the purpose of having the common lot line between Lots 16 and 17 determined. The pertinent part of that statute provides: "When one or more owners of land, the corners and boundaries of which are lost, destroyed or in dispute, desire to have the same established, they may bring an action in the district court of the county where such lost, destroyed or disputed corners or boundaries, or part thereof, are situated, against the owners of the other tracts which will be affected by the determination or establishment thereof, to have such corners or boundaries ascertained and permanently established. * * * Either the plaintiff or defendant may, by proper plea, put in issue the fact that certain alleged boundaries or corners are the true ones, or that such have been recognized and acquiesced in by the parties or their grantors for a period of ten consecutive years, * * *."

The purpose of this statute is to authorize the district court to ascertain and establish corners or boundaries which are lost, destroyed, or in dispute. Either party is permitted to assert that certain alleged corners or boundaries are the true ones, or that they have been recognized and acquiesced in by the parties or their grantors for the prescriptive period of 10 consecutive years. The rule of recognition and acquiescence may be the means of determining the corner or boundary, but it is separate and distinct from establishment by adverse possession. Edmunds v. Sughrow, 233 Mich. 400, 206

N. W. 309. One may not assert a cause of action under a special statute and make proof under another.

The plaintiff alleges in her petition that defendant's predecessor in title, Roy Hampton, and plaintiff's predecessor in title, Thomas B. Augustine, during the year 1925 or 1926, orally agreed to the boundary line between Lots 16 and 17 and that, pursuant to such agreement Hampton planted a row of trees and a hedge on such agreed-upon boundary line. The evidence does not sustain a finding that such an agreement was ever made. Hampton testified that he never had any conversation with Augustine with reference to the boundary line between their properties. He testified that he planted a row of trees on the west side of Lot 17 and another row along the east side of Lot 18. He had no survey made and located the lines for the trees by measuring 25 feet each way from the center of the house located on the two lots. In so doing, it is evident that he made a mistake and each of the two rows of trees were approximately 7 feet east of the true lot lines as measured from the true northeast corner of Block 8. This error was subsequently discovered by the owner of Lot 19. Any difficulty with the owner of Lot 19 was subsequently adjusted by the purchase by Hampton's grantees, the Muzzeys, of the west 7 feet of Lot 19.

Thomas B. Augustine testified that he had never occupied Lot 16 during the time he owned it. He stated that he never discussed the location of the lot line with Hampton at any time and that they had never had any trouble about it. There is evidence that the water-meter box was north of Lot 17 and that Augustine crossed the corner of Lot 17 with his water line. Hampton testified that he consented to the arrangement. It is clear that the use of Lot 17 to carry Augustine's water line was permissive and that it is immaterial to the issues here involved. There is no evidence of an agreement, oral or written, fixing the boundary other than as measured out by the surveyors.

The record shows that two surveyors located the true line between Lots 16 and 17 to be at the place contended for by the defendant. The defendant constructed a picket fence on this line which the plaintiff contends is 7 feet 6 inches over on her property. The evidence shows that the fence is inside of defendant's line as established by the surveyors. There being no agreement established which determined the location of the boundary as contended by plaintiff, the only question remaining is the contention of plaintiff that the boundary line was along the row of locust trees by recognition and acquiescence.

"It is well settled that where the boundary lines of adjoining landowners are not definitely known or their location is in dispute, such owners may establish the lines either by a written or by a parol agreement; such boundary lines may also be established by their mutual recognition of, and acquiescence in, certain lines as the true boundary lines, the courts being reluctant to interfere therewith after the lines have been permitted to exist over such a peroid of time that satisfactory proof of the true lines is difficult." 8 Am. Jur., Boundaries, § 72, p. 797.

"It is well established that if adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for a long period of time—usually the time prescribed by the statute of limitations—they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one. * * * The cases approving the doctrine of acquiescence generally do not differentiate between cases where the boundary was uncertain or in doubt at the time it was first acquiesced in and cases where it was known and certain. However, in the second case, only adverse possession can avail the person claiming under the boundary so recognized." 8 Am. Jur., Boundaries, § 80, p. 802.

In Griffin v. Brown, 167 Iowa 599, 149 N. W. 833,

the question of acquiescence is ably discussed as follows: "It is apparent that one party cannot acquiesce in a line created by himself, and bind the other party by his acquiescence, even though he acts in good faith, believing it to be the boundary line. * * * Acquiescence involves more than a mere establishment of a line by one party, and the taking of possession by him. It involves the idea that the other, with knowledge of the line so established and the possession taken, assents thereto, and this may be shown by his conduct, by his words, or even by his silence. There must, however, be something in the record to show that the party, charged with acquiescence, consented to the act of the other in establishing the line and assuming possession. Acquiescence means a consent to the conditions, and involves knowledge of the conditions. No one can be said to have acquiesced in a line until it is shown first that he had notice or knowledge of the claimed line. Acquiescence involves the idea of notice or knowledge of conditions, and the evidence must disclose that with such notice and knowledge he did something that indicated an assent to such conditions and an acquiescence therein." See, also, Dwight v. City of Des Moines, 174 Iowa 178, 156 N. W. 336.

It seems clear to us that the act of Hampton in placing a row of trees on his own property, even under the impression that it was on the boundary line, does not of itself indicate recognition and acquiescence. In the absence of a showing of mutuality of recognition and acquiescence on the part of both parties, plaintiff fails to make a case.

It will be noted from the foregoing that recognition of and acquiescence in a boundary line to be binding, in the absence of an agreement determining the same, requires mutuality of recognition and acquiescence by the parties. It partakes of the nature of an estoppel and, under our statute, it must exist for a period of 10 consecutive years. In the case at bar plaintiff's grantor,

Augustine, stated that he purchased Lot 16 pursuant to the description in the deed and that he sold it the same way. Plaintiff maintained a woven wire fence for many years along the east line of the rear of her lot as that line was determined by the survey. Hampton said that he thought the row of locust trees was on the line, a statement induced, no doubt, by the error he made when he planted them. The fact remains that the true line was at all times ascertainable by measurement and, until defendant undertook to place a fence on her west line, no reason existed for determining the true line. The evidence is in irreconcilable conflict as to which party used and maintained the disputed area. It appears to have been used to some extent by both and maintained in a very limited manner by each. Under such circumstances we consider the fact that the trial judge saw the witnesses and accepted the evidence of one party rather than that of the other. The evidence fails to show a mutual recognition of and acquiescence in the row of locust trees as the boundary line between Lots 16 and 17.

In Kennedy v. Gottschalk, 138 Neb. 842, 295 N. W. 813, we said: "In the instant case, there is no evidence of any agreement that the county road should constitute the boundary, and in fact there is no evidence that Stull Brothers, the then owners, had accepted or acquiesced in any given point as the boundary line. It is true that their agent testified that he assumed the road was the boundary line, but he further stated that the matter was never discussed by him with any one and there was never any question raised about it. Neither was there any conduct on the part of the owners or their agent which would indicate that they accepted the road as the dividing line. They rented the quarter-section as one tract. Nearly all of it was in pasture. There was no overt act on their part that would indicate a recognition of the road as a dividing line." The situation was little different in the case before us. Hampton thought the row of locust trees was the line, but the evidence

does not show that he told Augustine or the plaintiff that he had any such belief. There does not appear to have been any mutuality of understanding as to any boundary line different than that established when the lots were platted and which could be and were measured out from established corners.

The defendant asserts that she has been in open, notorious, hostile, and uninterrupted possession of Lot 17 as plotted and marked out on the ground from established corners for more than 10 years. Plaintiff contends in her brief that she and not the defendant has held the disputed strip of ground adversely for the statutory period of 10 years. Assuming that the question of adverse possession is in issue by the pleadings, the evidence does not sustain any such contention on the part of the plaintiff. The evidence is no different than that offered by the plaintiff in her attempt to show that she and her predecessor in title had occupied the ground west of the boundary line she claimed by recognition and acquiescence. There is no evidence at all of any adverse holding of the disputed strip of ground by her predecessor in title prior to the time plaintiff acquired it in 1943. This suit was commenced on December 12, 1951; consequently, plaintiff could not gain title by adverse possession except by tacking the adverse holding of her predecessor in title. There being no such adverse holding by her predecessor in title, her claim of adverse possession for the period of 10 consecutive years necessarily fails.

The decree of the trial court is in conformity with the determinations that we have here made. It is therefore affirmed.

AFFIRMED.