EMIL J. PALLAS, APPELLEE, v. LILLIAN M. DAILEY ET AL., APPELLEES, IMPLEADED WITH CLARENCE R. MURPHY ET AL., APPELLANTS.

100 N. W. 2d 197

Filed January 8, 1960. No. 34647.

*Tesar & Tesar,* for appellants.

*James R. McGreevy,* for appellee Pallas.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

We originally dismissed this appeal because of lack of jurisdiction. See Pallas v. Dailey, *ante* p. 277, 99 N.

W. 2d 6. Since that time, for good cause shown, we permitted a supplemental transcript to be filed. See Rule 4 c, Revised Rules of the Supreme Court, 1959. An order nunc pro tunc, entered by the trial court on November 19, 1959, and contained in the supplemental transcript, shows the original decree of the trial court was actually rendered on January 29, 1959, rather than on November 14, 1958, as disclosed by the original transcript filed herein on May 2, 1959. In view of that fact the motion for new trial of defendants Clarence R. and Abbie Ruth Murphy and Carl Johannes and Johanna Hoff, filed on February 2, 1959, was filed within time and this court acquired jurisdiction of the cause when this appeal was properly taken by these defendants from the overruling thereof. Consequently we vacate our order of dismissal and consider the appeal on its merits.

Appellee Emil J. Pallas brought this action to have determined the correct location of a disputed boundary line between real estate owned by him and that owned by appellants Clarence R. Murphy and Abbie Ruth Murphy, to whom we shall hereinafter refer as the Murphys.

At all times herein mentioned appellee was admittedly the owner of the east 30 feet of Lot 7 and the west 60 feet of Lot 8 in Block 77, in Benson, now incorporated within and a part of the city of Omaha, as surveyed, platted, and recorded in Douglas County, Nebraska, having acquired the same from Lillian M. Dailey by warranty deed dated January 25, 1955. The Murphys were, at all times herein material, the owners of the west 90 feet of Lot 7 in said Block 77, having acquired the same from Edwin C. and Harriet E. Quist by deed dated July 26, 1957. The Quists had acquired this property from Lillian M. Dailey by deed dated May 22, 1955.

Appellants Carl Johannes Hoff and Johanna Hoff were apparently made defendants herein because they were, at the time this action was commenced, the owners of the south half of Lot 6 of said Block 77. It should be

mentioned that Lillian M. Dailey was originally made a party defendant. However, the cause was dismissed as to her in the court below and no appeal was taken therefrom.

The trial court rendered a decree in favor of the appellee, quieting his title in and to the east 30 feet of Lot 7 in said Block 77 and ordering the Murphys to remove therefrom their fence presently situated on and overlapping the above property within 60 days. This order is based on a finding by the lower court: "That a fence owned and erected by the defendants, Clarence R. Murphy and Abbie Murphy, and extending from Maple Street to the north for a distance of 300 feet is situated on a portion of the East 30 feet of Lot 7, Block 77, in Benson, owned by the plaintiff, Emil J. Pallas. That at the front of Lot 7, Block 77, in Benson (that is, Maple Street), the said fence of the defendants' overlaps the portion of the said Lot 7, Block 77, in Benson owned by the plaintiff, Emil J. Pallas, by 3.3 feet, and that the overlapping tapers off as the fence extends 300 feet north until at the rear of said Lot 7, Block 77, in Benson, the fence of the defendants, Clarence R. Murphy and Abbie Ruth Murphy, does not overlap the property of the plaintiff, Emil J. Pallas."

The issue raised by the pleadings is the proper location of the common boundary line between the properties of appellee and that of the Murphys. The question raised in regard thereto is the sufficiency of the evidence adduced by appellee to support his claim.

"* * * in an action of this character, appellant (here appellee) must recover upon the strength of his own title, * * *." Elsasser v. Szymanski, 163 Neb. 65, 77 N. W. 2d 815.

"It is a settled rule in this state that only a preponderance of evidence is required to establish an issue in civil actions, and cases of this kind (boundary disputes) are no exception to the rule." Bock v. Porterfield, 80 Neb. 523, 114 N. W. 597. And, as stated in

8 Am. Jur., Boundaries, § 90, p. 810: "The burden of proof upon an issue as to a boundary is upon the party having the affirmative of that issue. This burden, generally, must be established by a preponderance of the evidence."

"Suits in equity, on appeal to this court, are triable de novo, subject to the rule that when evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than another." Wilkie v. Banse, 166 Neb. 138, 88 N. W. 2d 181. See, also, Sofio v. Glissmann, 156 Neb. 610, 57 N. W. 2d 176.

The latter has particular application in this case as it relates to the evidence of surveyors William S. Cook and William J. Provoznik insofar as it is in conflict with that of surveyor Vern L. Hill.

Block 77, as originally surveyed, platted, and recorded, fronts on Maple Street to the south and on Seventy-eighth Street to the west. It consists of 10 lots, Lots 6, 7, 8, 9, and 10 constituting the south half thereof. The lots in the south half are numbered from west to east, that is, Lot 6 is to the west. These 5 lots all front on Maple Street, are 300 feet in depth and 120 feet in width except Lot 6, which was platted 117 feet in width as it fronts on Maple Street.

Surveyor Cook made his original resurvey in June 1955, surveying east from the section line located at the center of the intersection of Seventy-eighth and Maple Streets. Later, in the fall of 1957, Cook made a joint resurvey with surveyor Provoznik. This resurvey was from a point to the east. Surveyor Provoznik made the joint resurvey with surveyor Cook in October 1957, doing so from a point located at the northeast corner of Seventy-sixth Street.

Surveyor Hill made a resurvey in May 1953, and again in December 1956. He made this resurvey from a

marker that he thought was located at the southwest corner of Lot 7 or the southeast corner of Lot 6, that being a corner common to both lots. He measured 90 feet east from there to ascertain where the southeast corner of the Murphys' land should be. Hill disregarded original survey points.

We think the following principle is applicable to the above situation: "A resurvey not shown to have been based upon the original survey is inconclusive in determining boundaries, and will ordinarily yield to a resurvey based upon known monuments and boundaries of the original survey. So a resurvey which locates lines in accordance with a recorded plat will prevail over a resurvey not in accordance with such plat." 11 C. J. S., Boundaries, § 61, p. 634.

As stated in Perry v. Wright, 216 Miss. 652, 63 So. 2d 40: "He was warranted in finding, as he apparently did, that the survey of Polk, who testified for the defendant, correctly located the property line, and in not accepting the survey of Eustis, who testified for appellant. The Eustis survey was based upon a starting point of a certain iron pin which Eustis found south of the curb on Arthur Street, which he thought was the northeast corner of the Perry lot. From that pin he went south 63.2 feet and then measured the line dividing the parties' lands by turning at right angles. He did not verify the correctness of the location of the iron pin as being the true northeast corner of the Perry property. It was not checked against other established points in the Vicksburg survey. The trial court under such circumstances was justified in concluding that the starting point of the Eustis survey was not adequately established as correct." See, also, Jackson v. Snyder, 202 Iowa 262, 208 N. W. 321.

We think the resurvey of Cook and Provoznik, which placed the Murphys' fence as overlapping and on the appellee's lot, to be correct.

The error in Hill's resurvey is apparent from the

record. As originally surveyed and platted Lot 6 had a frontage on Maple Street of 117 feet. As of now it has a frontage thereon of 120 feet, thus extending it east some 3 feet onto Lot 7. Hill, by taking a marker located at this point and measuring 90 feet east therefrom, naturally overlapped the east 30 feet of Lot 7 by approximately that amount at the south end. We find the fence built by Murphys, although starting from a correct common point at the north end of the boundary line between appellee and themselves gradually encroached on appellee's property as the fence extended south until, at the south end thereof, it had encroached on the east 30 feet of Lot 7 for a distance of 3.3 feet. The appellee is entitled to have the fence constructed by Murphys on this 300-foot long, wedge-shaped piece of land removed and his title to the east 30 feet of Lot 7 quieted in him.

Murphys also pleaded adverse possession. It will be noted both appellee's and Murphys' properties were owned by Lillian M. Dailey as late as January 25, 1955. Under this situation we thing the following applies: "Where there is no evidence that a claimant and his predecessors in title have been in open, notorious, hostile, and uninterrupted possession of land for 10 years or more, his claim to title by adverse possession necessarily fails." Hakanson v. Manders, 158 Neb. 392, 63 N. W. 2d 436.

We have come to the conclusion that the judgment of the trial court is correct and should be affirmed. It is so ordered and, in view thereof, appellants' motion for rehearing is overruled.

AFFIRMED.

BOSLAUGH, J., participating on briefs.