Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/07/2020 09:06 AM CST

Kim Hawley, appellant, v.
John Skradski, appellee.

___ N.W.2d ___

Filed November 15, 2019.    No. S-18-849.

1. **Judgments: Jurisdiction: Appeal and Error.** When a jurisdictional issue does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court's; however, when a determination rests on factual findings, a trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect.

2. **Actions: Parties: Standing.** Whether a party who commences an action has standing and is therefore the real party in interest presents a jurisdictional issue.

3. **Jurisdiction: Standing.** Because the requirement of standing is fundamental to a court's exercise of subject matter jurisdiction, either a litigant or a court can raise the question of standing at any time.

4. **Standing.** The stage of the litigation in which a party claims that its opponent lacks standing affects how a court should dispose of the claim.

5. **Standing: Pleadings: Words and Phrases.** If a motion challenging standing is made at the pleadings stage, it is considered a "facial challenge" and a court will review the pleadings to determine whether there are sufficient allegations to establish the plaintiff's standing.

6. **Standing: Jurisdiction: Pleadings: Evidence: Proof: Words and Phrases.** If a motion challenging standing, and thus the court's subject matter jurisdiction, is raised after the pleadings stage and the court holds an evidentiary hearing and reviews evidence outside the pleadings, it is considered a "factual challenge" and the party opposing the challenge must offer evidence to support its burden of establishing subject matter jurisdiction.

7. **Jurisdiction: Pleadings: Appeal and Error.** Where the trial court's decision on a question of subject matter jurisdiction is based on a factual

challenge, the court's factual findings are reviewed under the clearly erroneous standard. But aside from any factual findings, the trial court's ruling on subject matter jurisdiction is reviewed de novo, because it presents a question of law.

8. **Actions: Parties.** Neb. Rev. Stat. § 25-301 (Reissue 2016) establishes an absolute requirement that all actions be brought in the name of the real party in interest, and the only allowable exceptions to this rule are set forth in Neb. Rev. Stat. § 25-304 (Reissue 2016).

9. ____: ____. Construed together, Neb. Rev. Stat. § 25-304 (Reissue 2016) and Neb. Rev. Stat. § 25-302 (Reissue 2016) permit an assignee of a chose in action to maintain an action thereon in the assignee's own name when the assignment being sued upon is in writing.

10. **Jurisdiction.** Whether a court has subject matter jurisdiction is a threshold issue that should be resolved prior to an examination of the merits.

11. **Actions: Parties: Standing.** Because Neb. Rev. Stat. § 25-304 (Reissue 2016) allows assignees of choses in action to "sue on any claim assigned in writing," evidence of an oral assignment of a chose in action is insufficient as a matter of law to confer standing to sue on the assignee.

12. **Jurisdiction: Appeal and Error.** When a lower court does not gain jurisdiction over the case before it, an appellate court also lacks the jurisdiction to review the merits of the claim.

Appeal from the District Court for Douglas County: James T. Gleason, Judge. Vacated and dismissed.

Scott A. Lautenbaugh, of Law Offices of Scott Lautenbaugh, for appellant.

Michael J. O'Bradovich, P.C., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

Kim Hawley brought this civil action against John Skradski for breach of contract, conversion, and tortious interference with a business relationship or expectation. A jury trial was held, and at the close of Hawley's case in chief, the district court granted Skradski's motion for a directed verdict. Hawley appeals. Because we find Hawley lacked standing to bring the action in his own name, we vacate the district court's judgment and dismiss the appeal.

## BACKGROUND

### Hawley's Complaint

Hawley filed this lawsuit against Skradski in the district court for Douglas County on October 28, 2015. Hawley is the only named plaintiff. Hawley's complaint alleged he purchased a heating and air conditioning (HVAC) business from an entity affiliated with Skradski in 2008 and operated that HVAC business on premises leased from Skradski. The complaint alleged that in July 2011, Hawley ceased operating the HVAC business and vacated the leased premises. It further alleged that thereafter, Skradski "took possession of the premises" and "[u]nbeknownst to [Hawley] and without his authorization, [Skradski] began operating the business he had sold to [Hawley]" using the same premises. Hawley alleged that Skradski converted "payments, work orders, business lists, contacts, contracts and the like, and converted various other assets of the business to his use" and that this "caused the value of the business to decrease." Hawley sought to recover damages in an unspecified amount, relying on theories of breach of contract, conversion, and tortious interference with a business relationship or expectation.

### Skradski's Answer

Skradski's answer generally denied the allegations of the complaint and specifically denied having sold the HVAC business to Hawley individually. Instead, Skradski's answer alleged that in 2008, he sold the HVAC business to KNR Capital Corp. (KNR) and leased the business premises to the same corporate entity. In addition, Skradski's answer alleged that Hawley's complaint failed to state a claim upon which relief could be granted and that Hawley lacked standing to assert the claims.

### Trial Evidence

A jury trial was held over a 2-day period in August 2018. Among the evidence offered and received was a copy of the 2008 asset purchase agreement pertaining to the sale of the

HVAC business. The asset purchase agreement showed the HVAC business was purchased by KNR, and not by Hawley individually.

During trial, Hawley testified that when the asset purchase agreement was signed, he and his wife each owned between 1 and 2 percent of KNR and the remainder was held by what Hawley described as a "401K rollover" holding company that was "part of [a] trust" that Hawley was "in charge of." Hawley later testified that when he and his wife subsequently divorced, her ownership share in KNR was "essentially nullif[ied]," although he did not fully explain how that occurred.

KNR operated the HVAC business from 2008 through July 2011. According to Hawley, he closed the HVAC business after learning the general manager had been "padding his numbers," resulting in a shortfall of several hundred thousand dollars. After closing the HVAC business, Hawley, as KNR's president, entered into a contract to sell the HVAC business to McCarthy Heating & Air Conditioning Service, Inc. (McCarthy).

Hawley testified that before closing on the contract to sell the HVAC business to McCarthy, he and the president of McCarthy visited the HVAC business premises to examine the inventory. During that October 2011 visit, Hawley saw people who had been employed by the HVAC business during the time he operated it, and it appeared to Hawley they were operating an HVAC business from the premises. Hawley also testified that while he was on the premises, he saw a work chart, evidence of billings, an employee gathering materials to return to a vendor for credit, and a compact disc copy of the HVAC business' customer database. Skradski and other witnesses generally refuted Hawley's account of what he saw during the October visit to the business premises. And Skradski denied operating an HVAC business from the premises during October 2011.

Hawley testified that as a result of the October visit, McCarthy learned KNR had suffered a "substantial loss of the inventory" and the sale price for the HVAC business dropped from $100,000 to $50,000.

During his direct examination, Hawley was asked, "What eventually happened to [KNR]?" and he replied, "We eventually closed it down . . . and transferred the remaining assets to myself." He testified that the remaining assets were "the rights to pursue this case" against Skradski, and then reiterated that he "assigned that to myself." He offered no further details on how the alleged assignment from KNR to Hawley occurred.

## Oral Motion to Amend Pleadings

On the morning of the second day of trial, after offering testimony about an assignment from KNR, Hawley made an oral motion to "amend the pleadings to comport with the evidence." Hawley sought to amend his complaint to add an allegation that KNR assigned its claim against Skradski to Hawley. Alternatively, Hawley sought to add KNR as a party plaintiff. Skradski opposed the requested amendments on grounds they were untimely.

The court refused Hawley's request to add KNR as a party plaintiff. It reasoned there was evidence that KNR made an "oral assignment" to Hawley of any claim it had against Skradski, and it found this evidence tended to show that Hawley, and not KNR, was the proper plaintiff. But the court granted Hawley's motion to conform the pleadings to the evidence for purposes of alleging an assignment from KNR to Hawley of any claim KNR had against Skradski. After indicating on the record that such an amendment would be allowed, the court instructed Hawley's counsel, "You may file an appropriate pleading," to which counsel replied, "Thank you, [y]our honor." No amended pleading appears in our record, but the parties thereafter treated the assignment from KNR to Hawley as having been raised in the operative pleading.[1]

## Motion for Directed Verdict

After the close of Hawley's case in chief, Skradski moved for a directed verdict, arguing Hawley had failed to meet his

---

[1] See Neb. Ct. R. Pldg. § 6-1115.

burden of proof on all three theories of recovery: breach of contract, conversion, and tortious interference with a business relationship or expectation. The district court agreed, and without expressly ruling on whether Hawley had proved standing to bring suit in his own name, the court granted the directed verdict and dismissed the action. Hawley filed this timely appeal, which we moved to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Hawley assigns, restated, that the district court erred in (1) granting Skradski's motion for directed verdict, (2) finding there was insufficient evidence of conversion, and (3) finding there was insufficient evidence of tortious interference with a business relationship or expectation.

## STANDARD OF REVIEW

[1] When a jurisdictional issue does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court's; however, when a determination rests on factual findings, a trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect.[2]

## ANALYSIS

### Standing and Real Party in Interest

[2,3] Although neither party raises the issue on appeal, we must first determine whether Hawley has standing and is the real party in interest for purposes of bringing this action against Skradski. Whether a party who commences an action has standing and is therefore the real party in interest presents a jurisdictional issue.[3] Because the requirement of standing is fundamental to a court's exercise of subject matter jurisdiction,

---

[2] *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018).

[3] *Id.*

either a litigant or a court can raise the question of standing at any time.[4]

[4-6] The stage of the litigation in which a party claims that its opponent lacks standing affects how a court should dispose of the claim.[5] If a motion challenging standing is made at the pleadings stage, it is considered a "facial challenge" and a court will review the pleadings to determine whether there are sufficient allegations to establish the plaintiff's standing.[6] But if the challenge to standing, and thus the court's subject matter jurisdiction, is raised after the pleadings stage and the court holds an evidentiary hearing and reviews evidence outside the pleadings, it is considered a "factual challenge" and the party opposing the challenge must offer evidence to support its burden of establishing subject matter jurisdiction.[7]

[7] Where the trial court's decision on a question of subject matter jurisdiction is based on a factual challenge, the court's factual findings are reviewed under the clearly erroneous standard.[8] But aside from any factual findings, the trial court's ruling on subject matter jurisdiction is reviewed de novo, because it presents a question of law.[9]

Here, the district court heard evidence on the issue of Hawley's standing to bring suit in his own name. We therefore review its factual findings on this jurisdictional issue for clear error, and we review de novo the ultimate question of Hawley's standing.

## Real Party in Interest Statutes

At trial, Hawley admitted it was KNR that purchased the HVAC business from Skradski and sold the HVAC business

---

[4] *Id.*

[5] *Id.*

[6] See *id*.

[7] See *id*.

[8] See *id.*

[9] See *Bohaboj v. Rausch*, 272 Neb. 394, 721 N.W.2d 655 (2006).

to McCarthy. Hawley testified that he was one of several shareholders of KNR when it purchased the HVAC business in 2008 and that he was the sole shareholder of KNR when it sold the HVAC business in 2011. But Hawley did not bring this action in his capacity as an officer of KNR—he brought it individually. And even where one person owns all the stock of a corporation, property belonging to the corporation does not become the property of such person.[10] On this record, any chose in action against Skradski belonged to KNR, not to Hawley individually. Hawley apparently recognized this and claimed to be prosecuting this action as the assignee of KNR's chose in action against Skradski.

[8] Nebraska's real party in interest statute provides that "[e]very action shall be prosecuted in the name of the real party in interest except as otherwise provided in section 25-304."[11] We have recognized that § 25-301 establishes an absolute requirement that all actions be brought in the name of the real party in interest and that the only allowable exceptions to this rule are set forth in Neb. Rev. Stat. § 25-304 (Reissue 2016).[12]

[9] Section 25-304 states in relevant part: "Assignees of choses in action assigned for the purpose of collection may sue on any claim assigned in writing." A related statute, Neb. Rev. Stat. § 25-302 (Reissue 2016), states: "The assignee of a thing in action may maintain an action thereon in the assignee's own name and behalf, without the name of the assignor." Construing these statutes together, Nebraska law permits an assignee of a chose in action to maintain an action thereon in the assignee's own name when the assignment being sued upon is in writing. As such, Hawley could establish standing to bring this action in his own name, and thus show the court

---

[10] See *State ex rel. Sorensen v. Weston Bank*, 125 Neb. 612, 251 N.W. 164 (1933).

[11] Neb. Rev. Stat. § 25-301 (Reissue 2016).

[12] *Orr v. Knowles*, 215 Neb. 49, 337 N.W.2d 699 (1983).

had subject matter jurisdiction, if he proved by a preponderance of the evidence[13] the existence of a written assignment under § 25-304.[14]

## Hawley Failed to Prove Written Assignment Under § 25-304

The only evidence of an assignment from KNR was Hawley's testimony, and it was sparse. During Hawley's direct examination, he was asked, "What eventually happened to [KNR]?" and he responded, "We eventually closed it down . . . and transferred the remaining assets to myself." Hawley then explained that the only assets that were transferred were "the rights to pursue this case," and again said he "assigned that" to himself. Hawley did not produce a written assignment from KNR, and his testimony did not expressly reference a written assignment.

[10] After hearing Hawley's testimony about the assignment, the district court found KNR had made an "oral assignment" to Hawley of any claim it had against Skradski. Although the court did not expressly rule on whether the oral assignment gave Hawley the requisite standing to support the exercise of subject matter jurisdiction, it found Hawley was the proper plaintiff, and it reached the merits of Hawley's claims and granted Skradski's motion for a directed verdict on those claims. Whether a court has subject matter jurisdiction is a threshold issue that should be resolved prior to an examination of the merits,[15] and we therefore conclude the court implicitly found it had subject matter jurisdiction.

---

[13] See, *Wetovick v. County of Nance*, 279 Neb. 773, 782 N.W.2d 298 (2010); *Pallas v. Dailey*, 169 Neb. 533, 100 N.W.2d 197 (1960).

[14] See *Archer v. Musick*, 147 Neb. 1018, 1027, 25 N.W.2d 908, 913 (1947) ("'assignees of choses in action assigned for the purpose of collection'" are considered real parties in interest and authorized to maintain actions thereon as such).

[15] See, generally, *Holmstedt v. York Cty. Jail Supervisor*, 275 Neb. 161, 745 N.W.2d 317 (2008).

As noted, we review factual findings related to the court's subject matter jurisdiction for clear error[16] and the court's ultimate determination as to subject matter jurisdiction de novo.[17] On this record, it was not clearly erroneous to find that KNR made an oral assignment to Hawley of its claim against Skradski.

[11] But because § 25-304 allows assignees of choses in action to "sue on any claim assigned in writing," we find on de novo review that evidence of an oral assignment of a chose in action is insufficient as a matter of law to confer standing to sue on the assignee. Because Hawley failed to prove he was the assignee under a written assignment from KNR of a chose in action against Skradski, Hawley failed to prove his standing to bring this suit in his own name under § 25-304. As such, the district court lacked subject matter jurisdiction over the cause.

## CONCLUSION

[12] When a lower court does not gain jurisdiction over the case before it, an appellate court also lacks the jurisdiction to review the merits of the claim.[18] We thus vacate the district court's judgment and dismiss the appeal for lack of subject matter jurisdiction.

VACATED AND DISMISSED.

---

[16] See *Jacobs Engr. Group, supra* note 2.

[17] See *Bohaboj, supra* note 9.

[18] *State ex rel. Rhiley v. Nebraska State Patrol*, 301 Neb. 241, 917 N.W.2d 903 (2018).