MATHILDA PLATH, APPELLEE, v. JOHN BRUNKEN, APPELLANT.

FILED MAY 4, 1918.   No. 20037.

1. **Work and Labor:** SERVICES: PAYMENT: PRESUMPTION.   When an incompetent person, unable to support herself, is taken into a family and cared for and furnished with board and clothes and the necessaries of life, the presumption is that any services rendered by such incompetent are fully paid for by the support furnished.

2. ———: ———: ———: ———.   If such person is competent to do all kinds of labor and able to earn much more than her care and support, and does in fact earn very much more than any reasonable estimate of the cost of her board, clothes and care, the presumption is that the party so taking her into the family will pay the reasonable value of her services over and above her support and care.

3. ———: ———: ———: ———.   When a young girl is taken into a family and kept until majority, the law, in the absence of any circumstances showing a different presumption, would imply that such services as she might render during her minority were compensated by her care and keeping.

4. ———: ———: ———: IMPLIED CONTRACT.   In such case, if, upon reaching her majority, she was able to render valuable services and continued to do so for thirty years, the law, in the absence of an express contract, might imply an agreement to compensate her reasonably for such services.

5. ———: ———: COMPENSATION: QUESTION FOR JURY.   If the evidence is substantially conflicting as to the conditions and circumstances under which the plaintiff was taken into and retained in the defendant's family, and as to the value of the services rendered, whether such person is entitled to compensation is ordinarily a question of fact for the jury.

6. **Trial:** INSTRUCTIONS: COPYING PLEADINGS.   The trial court should submit to the jury a plain statement of the issue to be determined. Copying the pleadings in full in the instructions is generally objectionable, and, if it appears to have misled the jury, may require a reversal.

Plath v. Brunken.

7. **Appeal:** Instructions: Review. When the motion for new trial challenges formally all or many of the rulings of the court in giving and refusing instructions, and only a few of such rulings are discussed in the briefs upon appeal, and the record does not show that the complaining party offered suitable instructions in lieu of those complained of, or in any manner called the attention of the trial court to the specific question relied upon in this court, this court will not ordinarily regard the supposed error as material, when from the whole record it does not appear that the jury were probably misled thereby.

8. **Objections to evidence** cannot be considered in this court unless the same were made and passed upon in the trial court.

9. **Trial:** Finding of Facts: Inferences. When the jury find the facts and circumstances upon which their. verdict will depend from a preponderance of the evidence, it is for them to determine the "fair inference" from the facts so established.

10. **Appeal:** Conflicting Evidence. The verdict of a jury upon substantially conflicting evidence will not be reversed as unsupported unless, upon the whole record, it must be found to be clearly wrong.

Appeal from the district court for Platte county: George H. Thomas, Judge. *Affirmed.*

*Albert & Wagner,* for appellant.

*Reeder & Lightner* and *Otto F. Walter, contra.*

Sedgwick, J.

The plaintiff brought this action in the district court for Platte county to recover for alleged services rendered the defendant while in the defendant's family as a member thereof. The verdict and judgment were in her favor, and the defendant has appealed.

It is earnestly contended on the one side that when an incompetent person, unable to support himself or herself, is taken into a family and cared for and furnished with board and clothes and the necessaries of life, the presumption is that any services rendered by such incompetent are fully paid for by the support furnished. On the other side it is as strenuously contended that, if such a person is competent to do all kinds of labor and able to earn much more than her care and support, and does in fact earn very much more than any

.reasonable estimate of the cost of her board, clothes and care, the presumption is that the party so taking her into the family will pay the reasonable value of her services over and above her support and care. Under the authorities presented on either side, it appears that both of these propositions are correct. The defendant cites several cases on his proposition that a member of a family is not entitled to compensation for services rendered, and among them *Wise v. Outtrim,* 117 N. W. 264 (139 Ia. 192), in which it was said: "In the absence of an agreement, one who renders domestic services in a family of which she is a member is not entitled to recover compensation therefor." This statement in the syllabus is immediately followed by the statement: "While domestic services, rendered in a family by a member thereof, are presumed to be gratuitous, such presumption is rebuttable, and whether or not an agreement for remuneration existed is a question of fact." The question then becomes a question of fact as to the existing conditions and circumstances under which the plaintiff was taken into and retained in the defendant's family. If the evidence in regard to the facts showing the conditions and circumstances of the case is substantially conflicting, the proper course then is to submit the question to the jury with suitable instructions. The petition, upon which the case was tried, alleged that the plaintiff in her infancy was injured by a fall which she received while in the care of her sister, who afterwards became the wife of this defendant, and that as a result of this injury the plaintiff became "an incompetent person," and that afterwards, in 1875, plaintiff's sister had intermarried with the defendant, and, because of her sister's responsibility for the accident, the defendant "took the plaintiff into their family as a member thereof." The petition then alleges: "It was the intention of the defendants at the time the plaintiff was so taken into their home and the intention of the plaintiff, so far as she was capable of forming and having

an intention, that she was to remain with and have a home with the defendants, including board, clothing and all necessaries, during the remainder of her lifetime, or, in case of the defendants' death before hers, that she should be provided for by them or paid by the defendants for her services, and it was the further intention of the plaintiff and defendants that, if at any time they failed to provide her a home, board, clothing, and other necessaries, they should pay her at such time the reasonable value of her services during the whole period of time she remained with them." Plaintiff evidently assumed that this is an allegation of an implied contract, because in the petition it is followed with the allegation: "That the plaintiff faithfully performed said contract and remained with the defendants from about the 3d day of May, 1875, to the 8th day of November, 1915. During said period, the plaintiff not only did a large amount of the housework of said defendants, including washing, ironing, cooking, scrubbing, housecleaning, etc., but milked the cows, did the outside chores, worked in the fields, and did other outside work. That her average earnings during all of said time were not less than $200 per year, in addition to her board, clothing, and other necessaries furnished by the defendants."

The trial court evidently considered these allegations of the intentions of the parties as allegations of an implied contract on their part, and repeated the allegations in full in the instructions to the jury. The court also, instead of a plain statement of the issue to be tried, repeated in the instructions other similiar allegations of the petition. Such practice has frequently been criticized by this court, and in *Hutchinson v. Western Bridge & Construction Co.*, 97 Neb. 439, it is said: "It may be reversible error to include such statements in that part of the charge of the court defining the issues to be tried, and, if the reviewing court is satisfied that the jury has been misled by so doing, it will be its duty to grant a new trial." This instruc-

tion is challenged in the motion for new trial in these words: "The court erred in giving instruction No. 1 on its own motion." And each action of the court in giving or refusing an instruction, some 12 or 13 in all, is complained of in the motion for a new trial in an exactly similiar manner. Whether the particular instruction now being considered was especially called to the attention of the court is not shown by the record, and it does not appear that the defendant offered and requested an instruction in lieu thereof. Under the rule that alleged errors of the trial court will not be considered in this court unless they are brought to the attention of the trial court in the motion for new trial, the practice has grown up of alleging in the motion for new trial seriatim and perfunctorily innumerable rulings of the trial court in the course of the trial, very few of which are discussed or challenged in the briefs, and apparently few, if any, of them especially called to the attention of the trial court. This practice undoubtedly frequently results in misleading the trial court, and may result afterwards in reversals for errors that have not been fully presented to and considered by the court. Under such circumstances we have continually given consideration to the fact that no suitable instruction has been prepared and presented to the trial court in lieu of the instruction particularly complained of in the brief filed in this court. In such case, unless it clearly appears that the jury were misled by the instruction complained of, the error has not been considered to require a reversal.

The plaintiff and her father were both taken into defendant's family, and cared for until the father died. When they so went into defendant's family, the plaintiff was about ten years of age. She was mentally incompetent, and it could not be considered probable that for some time at least she would be able to earn her own support. She, however, remained in the defendant's family for more than 40 years; that is, for more than 30 years after she became of legal age. During

that time the defendant was so situated that the kind of services that this plaintiff could render would be necessary and valuable. He had little or nothing at the time that plaintiff became of age, and from that time on improved his condition financially until he left his farm and went to town to live and enjoy a competency. He then left the plaintiff on the farm in the care of his son, who soon quarreled with the plaintiff, or, as the defendant alleges, the plaintiff quarreled with him, and the son refused longer to care for the plaintiff, and she was, in her old age, consigned to the care of her sister, who was not so favorably situated to care for her as the defendant had been. There was evidence from which the jury might find that from the time the plaintiff became of age until about the time the defendant left her at the farm she was competent to do all kinds of work that might be expected of a woman of her age, and that her services were of much greater value than the expense of her keeping. The defendant insists that the implications of the law as to his liability must be derived entirely from the conditions and circumstances at the time that the plaintiff, at the age of ten years, was taken into his family. If, when she became of age, she had left his family and had gone where she could obtain fair compensation for her services, the presumption the defendant insists upon would be indulged. When a young girl is taken into a family and kept until majority, the law, in the absence of any circumstances showing a different presumption, would imply that such services as she might render during her minority were compensated by her care and keeping. If, however, upon reaching her majority, she was able to render valuable services and continued to do so for 30 years, the law, in the absence of an express contract, might imply an agreement to compensate her reasonably for such services. And in this case, if the jury believed this evidence in regard to the services she rendered and the value thereof, they might find an implied agreement on the defendant's part to in some

manner compensate her for those services. If he had
continued to provide for her during her lifetime, there
would be more ground for the presumption that she had
been compensated for her services. The defendant's
complaint that evidence in regard to her abandonment
by the defendant in her old age was incompetent can-
not now be considered. The plaintiff in the brief alleges
that no objection was taken to this evidence at the
time it was given, and the defendant in his reply brief
does not call our attention to any objections of that kind,
and we have not discovered them in the record.

The court instructed the jury: ''Under the issues
formed by these pleadings the two questions for you to
determine are: Whether the services performed by the
plaintiff were so performed as a member of the Brunken
family, or whether they were so performed as a hired
servant, or under such circumstances as would lead to a
fair inference of an implied promise to pay for the
same. Then, in the event that you shall find that the
services were performed as a hired servant or under
such circumstances, as shown by the evidence, as leads
to a fair inference of an implied promise on the part
of John Brunken to pay for the same, you are called
upon to determine what the value of these services were,
over and above the value of the food, lodging and cloth-
ing furnished to and provided for her, and of the
necessary care, if any, necessarily bestowed upon her.''

The defendant complains that this instruction submits
the question whether there was an implied promise to
pay for the services, and says that is an issue not
tendered by the petition. The reason alleged is that
the plaintiff was only ten years old when taken into
defendant's family, and that fact rebuts any pre-
sumption of an implied promise to pay for services.
But, as we have already seen, the implied promise
might arise when the plaintiff became of mature age
and was rendering valuable services.

The instruction is also objected to on the ground
that ''it proceeds upon the theory that, if there was an

implied contract between the plaintiff and the defendant, it covered the entire period she was an inmate of the defendant's home.'' This is perhaps a more serious objection to the instruction. If the instruction had read, "whether the services or some part thereof performed by the plaintiff,'' etc., the objection would have been obviated, and, if the defendant had offered an instruction proper in that regard, the court would no doubt have adopted it. It is true that it could not be implied that the defendant would pay the plaintiff for services during her minority, but it seems clear that the jury did not consider that she could recover for such services, and, in the absence of any request for a correct instruction upon that point, the defendant is not entitled to a reversal for this inaccuracy.

The instruction is also objected to because of the use of the words ''a fair inference,'' but the jury in the court's instructions were told that the facts and circumstances from which they find their verdict must be proved by the plaintiff by a preponderance of the evidence, and when the circumstances are so proved and found by the jury, it is for them to decide what is a fair inference therefrom. This instruction might have stated the issue more definitely and accurately, and, if a suitable instruction had been tendered in lieu thereof, it would no doubt have been given. This same suggestion applies to the objection to other instructions in which the same expression occurs.

The defendant objects to the competency of the evidence as to the value of the plaintiff's services, and says: ''Not one of the witnesses offered upon this point showed himself competent to testify.'' He names one of the witnesses in particular as having failed to show a proper foundation for her testimony. This witness, when asked what such services were worth, answered: ''I can't say what it is worth to Mr. Brunken what she did, but I can say if she had worked for me what it is worth.'' Other similiar evidence of this witness shows that she knew the value of such services.

These objections to the competency of the witness upon this point should have been carefully called to the attention of the court, and without doing so the defendant is not in a position now to ask for a reversal because of the admission of such testimony.

The objection that the evidence as a whole is not sufficient to support the verdict will not require a reversal. There is in the record substantial evidence of value, and the fact that there is some conflicting evidence would not justify taking the case from the jury. The trial seems to have been closely contested by energetic and competent attorneys, and while it is perhaps not free from difficulties, we have not found such errors in the record as we consider require a reversal.

The judgment of the district court is

AFFIRMED.

LETTON, J., not sitting.