782 N.W.2d 298 (2010)
279 Neb. 773
Rodney M. WETOVICK, Nance County Attorney, appellee and cross-appellant,
v.
The COUNTY OF NANCE, a body politic and corporate, et al., appellants and cross-appellees.
No. S-08-1302.
Supreme Court of Nebraska.
April 29, 2010.
*304 George E. Martin III and Aimee C. Bataillon, Omaha, of Spencer, Fane, Britt & Browne, L.L.P., for appellants.
Mark M. Sipple, Columbus, of Sipple, Hansen, Emerson & Schumacher, for appellee.
Rodney M. Wetovick, Nance County Attorney, pro se.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

SUMMARY
The appellee, Rodney M. Wetovick, the Nance County Attorney, submitted a budget with a salary request for a full-time secretary. The appellant Nance County Board of Supervisors (Board) refused to approve Wetovick's budget and instead voted to require Wetovick to employ part-time secretaries. Wetovick sued Nance County, the Board, and its members, seeking a declaratory judgment that his salary determination was reasonable and that the Board's disapproval of his decision was unreasonable. For simplicity, we will refer only to the Board.
After a bench trial, the court found that Wetovick's request was reasonable and that the Board had unreasonably required him to have part-time secretaries. It ordered the Board to approve Wetovick's budget request for a full-time secretary.
The issue is not whether a county board can cut an officeholder's budget. It can. The issue is whether a county board can dictate the terms of employment for an officer's employee absent proof that the officer's terms are unreasonable. It can't. We conclude that under Neb.Rev.Stat. § 23-1111 (Reissue 2007), the Board lacked authority to disapprove Wetovick's reasonable salary request absent a finding that the request was arbitrary, capricious, or unreasonable.

BACKGROUND
Wetovick was elected Nance County Attorney in November 2006. Before taking office in January 2007, he informally surveyed other county attorneys in the area to determine the staffing requirements and the reasonable compensation for legal secretaries. He concluded that he would need a full-time legal secretary and that reasonable compensation was $24,000.
On January 4, 2007, after conducting interviews for secretaries, Wetovick hired Cyndy Pilakowski. Pilakowski's salary was $24,000 on an annualized basis, or $12,000 through June 30, 2007, which was the end of the county's 2006-07 fiscal year. Pilakowski was already a county employee and was covered under the county's health insurance policy.
Wetovick believed that under § 23-1111 and the Board's personnel policy manual, he had authority to hire a secretary and set the position's salary and working conditions. *305 The manual provided that each county official had hiring authority and the duty to inform new employees of their salary, benefits, and working conditions. He also determined that the remaining funds in the county budget for his office were inadequate to pay a secretary. So he spoke to the Board about adjusting his budget for the remainder of the fiscal year. The Board agreed and paid Pilakowski's salary from January to June 2007. The board did not complain about his hiring choice or Pilakowski's performance.
Earlier, in 2003, the county had stopped offering new employees secondary health insurance for family members because of rising health insurance costs. After the change, new employees could obtain only single coverage for themselves. But because Pilakowski was a county employee before the change, she carried family coverage when she started working for Wetovick in January 2007.
In April 2007, the Board asked Pilakowski to accept a monthly incentive payment to drop her health insurance coverage because her husband carried insurance. To save money, the county paid employees a $200 monthly incentive if they dropped their single coverage insurance and a $400 monthly incentive if they dropped their family coverage. Pilakowski agreed to drop her family coverage. The county, however, treated her as a new employee and paid her only a $200 monthly incentive for dropping her coverage. But Pilakowski filed a successful grievance, and the county paid her the $400 monthly incentive for dropping family coverage. This dispute occurred before Wetovick submitted his 2007-08 budget in June 2007.
Also in the spring of 2007, the Board paid for a comparability study of other county attorneys' budgets and services. The study concluded that Nance County had twice the average number of felony cases as the other counties surveyed and significantly more open child support cases. But it also concluded that the budget for the Nance County Attorney's office was much lower than in other counties. This study was presented to the Board in May 2007.
The 2007-08 fiscal year began on July 1, 2007. In his June budget, Wetovick estimated $24,720 for his secretary's annual salary, which presented a 3-percent cost-of-living raise. In response, the Board proposed to budget him $6,120 for a fulltime secretary during the first 3 months of the fiscal yearJuly, August, and September. This amount represented 3 months' salary at the agreed-upon annual salary of $24,720. For the remaining 9 months of the fiscal year, the Board proposed to budget Wetovick $15,000 for part-time secretaries.
The Board's proposed budget of $15,000 for 9 months represented an annual budget of $20,000 for part-time secretaries, or a reduction of $4,720 from Wetovick's submitted estimate for his full-time secretary's annual salary. The Board's chairperson testified that for the last 9 months of the fiscal year, Pilakowski would have earned $18,600, instead of the $15,000 the Board budgeted Wetovick's office. Also, the Board concluded that Pilakowski would no longer be eligible for insurance after September 2007. So under its requirement of part-time secretaries, the Board would avoid paying Pilakowski monthly incentives for dropping her insurance. Avoiding these payments would reduce the county's costs by $3,600 for the last 9 months of the 2007-08 fiscal year. But the Board's chairperson agreed that Wetovick's estimated budget with a full-time secretary and the Board's proposed budget with part-time secretaries were about $7,700 to $8,900 apart. The range apparently *306 represented the cost savings for 9 months compared with a full year.
In September 2007, Wetovick appeared at the Board's budget hearing. The Board reiterated its position that he should employ only part-time secretaries to avoid paying benefits. Wetovick told the Board that his office was already short of the hours required under the county's contract with the State to perform child support enforcement. He stated that he did not believe he could meet his obligation with part-time employees. He explained to the Board that he needed to avoid turnover in his office because the State's computerized child support system had an extensive learning curve. The Board formally adopted its proposed revision of Wetovick's budget to reduce his budget for clerical staff from full-time to part-time.
After October 1, 2007, at Wetovick's request, his secretary continued working for him full time at a reduced salary and without her monthly incentive payments. In November, Wetovick sued the Board.

WETOVICK'S COMPLAINT
In his operative complaint, as relevant here, Wetovick sought a declaratory judgment for the following: (1) The Board's disapproval of his budget was unauthorized because the Board had not found that his budget was arbitrary and unreasonable; (2) his office needed a full-time assistant, and his secretary's salary and benefits were reasonable; (3) the Board's disapproval and revision of his budget was arbitrary, unreasonable, and unlawful; and (4) the Board was required to keep the child support incentive payments received during the 2006-07 fiscal year in a segregated account for enhancing child support enforcement efforts. At the end of trial, however, the court permitted Wetovick to amend his complaint so that the fourth allegation would include keeping "incentive and reimbursement" payments in a segregated account. Wetovick also sought a writ of mandamus ordering the Board to approve his budget as submitted without alteration. Finally, he sought costs and attorney fees.

EVIDENCE AT TRIAL
Wetovick testified that he needed a full-time secretary for two reasons. First, Wetovick believed it was important to have an experienced person available to conduct business with the public in his absence. Second, he believed he needed a full-time, experienced assistant to fulfill his office's child support enforcement duties.
The State's child support computer system is called CHARTS (Children Have a Right to Support). It keeps track of all child support cases in the state, including receipts, allocation, distribution, and disbursement. The administrator for finance and central operations of the Department of Health and Human Services (the Department) testified that CHARTS was a complex system and required considerable training to use. Wetovick also testified that CHARTS was complex and that the training was extensive and expensive. Wetovick had been told that becoming very proficient would require 2 to 3 years' experience. He could not operate the system and stated that Pilakowski had already attended numerous workshops and received other training from the Department. Another county attorney testified that his secretary was still learning the CHARTS system after a year because it was so complex and that he could not run his office without a full-time secretary.
The Department's reimbursement funds for child support enforcement depended upon Wetovick's office completing the necessary hours for the county's open cases. The Department had estimated that his office needed to put in 13 to 15 hours per week. Wetovick explained that through *307 CHARTS, his office would find individuals who start employment and owe child support or find individuals whose child support obligation should be modified. He stated that Pilakowski was the caseworker for his office who was required to put in 15 hours per week working on cases that needed attention. He also stated that she had not been able to complete the required hours because of prosecutorial matters. And Wetovick did not believe his office could provide 15 hours per week of child support enforcement duties with part-time assistants. It was because his office was already short of its required hours that he had asked his secretary to continue working full time after October 1, 2007.
Wetovick also stated that his office's efforts had more than doubled the amount of reimbursement funds that the county received. He believed that the increased funds easily covered the difference between his budget and the county's budget. The county did not dispute this increase in reimbursement funds or that they would make up the difference in the budgets.
Because the position required extensive training and experience, Wetovick testified that he wanted to avoid turnover. He stated that he did not want to hire someone who would later look for another job because his office paid low part-time wages and lacked benefits. Because he believed the job required full-time effort, he had not been as interested in applicants who mainly wanted part-time work. For the same reasons, he rejected the Board's suggestion that he employ two part-time secretaries instead of one full-time secretary.
County attorneys from nearby counties with smaller populations and fewer felony cases also testified. One stated that he employed both a full-time secretary and a full-time child support enforcement officer to assist him. The other employed a full-time secretary. Both testified that it was important to have an experienced, full-time secretary because of a county attorney's multiple duties and the necessity of having someone who could draft legal documents and deal with problems and requests for help in the county attorney's absence.
In justifying the Board's position, the Board's chairperson testified that Wetovick could have more hours of clerical assistance at a lower cost if he employed two part-time secretaries. As an example, he stated that under the Board's $15,000 budget for 9 months, two part-time secretaries could work 1.37 more hours per week than a full-time secretary, if Wetovick were able to hire them at $9.50 per hour, which represented the county's average part-time wage. But he conceded that the primary reason for the Board's disapproval of a full-time secretary for Wetovick was to avoid paying insurance benefits.
The chairperson also admitted that the county had not required all county positions to be filled by part-time employees not even road crew and janitor positions. He admitted that the only county office the Board believed should not be staffed with a full-time person was the county attorney's office. Moreover, Board members, who rarely worked full-time hours, were eligible to receive health insurance benefits or monthly incentive payments. And the record lacks any evidence that anyone competent to draft legal documents and assist with child support enforcement duties would do so for the county's average part-time salary and no benefits.

DISTRICT COURT'S ORDER
In its order, the court stated that any aspect of Wetovick's complaint that it had not addressed was denied. It concluded that under § 23-1111, the issue was whether Wetovick's insistence upon a full-time secretary was unreasonable, arbitrary, or capricious. It concluded that Wetovick had acted reasonably and that *308 the Board's decision to require him to use part-time assistants was unreasonable. It directed the Board to approve Wetovick's budget for the 2007-08 fiscal year to the extent that it related to full-time employment of clerical staff. It denied Wetovick's request for a writ of mandamus, because its remedy under his declaratory judgment claim showed that he was not without any other means of relief. Later, the court denied Wetovick's request for attorney fees and costs, because neither a statute nor uniform course of action allowed attorney fees. And while the county's conduct had been unreasonable, the court concluded that it did not amount to bad faith.

ASSIGNMENTS OF ERROR
The Board assigns, restated and condensed, that the court erred in (1) failing to determine that after the 2007-08 budget year ended, it lacked jurisdiction under the Uniform Declaratory Judgments Act[1] to consider Wetovick's budget request; (2) finding that Wetovick's request for a full-time assistant was reasonable; (3) finding that the Board's disapproval of his request and altering of his budget were unreasonable; and (4) failing to determine that the Board had authority under Neb.Rev.Stat. § 23-908 (Reissue 2007) to alter Wetovick's proposed budget.
On cross-appeal, Wetovick assigns that the court erred in (1) failing to award Pilakowski backpay and benefits; (2) failing to order the Board to set aside reimbursement funds received from the state and federal government, for costs incurred in child support enforcement, in a separate account to enhance child support enforcement; and (3) failing to award him attorney fees.

STANDARD OF REVIEW
An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute.[2] An action for a declaration that a governmental entity has violated a law is equitable in nature.[3] In reviewing an equity action for a declaratory judgment, an appellate court decides factual issues de novo on the record and reaches conclusions independent of the trial court.[4] But when credible evidence is in conflict on material issues of fact, the court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.[5]
Justiciability issues that do not involve a factual dispute present a question of law.[6] And statutory interpretation is a question of law.[7] We resolve questions of law independently of the determination reached by the court below.[8]

ANALYSIS OF BOARD'S APPEAL

THE CASE WAS NOT MOOT
The county's fiscal year for 2007-08 ended on June 30, 2008, and the court *309 entered its order in August 2008. The Board contends that Wetovick's declaratory judgment action was moot because the court could not make a present determination about the reasonableness of his budget proposal after the fiscal year had ended. So it argues that the court lacked jurisdiction to grant any relief. We disagree.
To obtain declaratory relief, a plaintiff must prove the existence of a justiciable controversy and an interest in the subject matter of the action.[9] A justiciable issue requires a present, substantial controversy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement.[10] Both standing and mootness are key functions in determining whether a justiciable controversy exists, or whether a litigant has a sufficient interest in a case to warrant declaratory relief.[11]
Mootness refers to events occurring after the filing of a suit which eradicate the requisite personal interest in the resolution of the dispute that existed at the beginning of the litigation.[12] Unless an exception applies, a court or tribunal must dismiss a moot case when changed circumstances have precluded it from providing any meaningful relief because the litigants no longer have a legally cognizable interest in the dispute's resolution.[13]
Wetovick sought a declaration that he reasonably required a full-time secretary to run his office and that the Board lacked authority to disapprove his budget. The court found that the Board had acted unreasonably in refusing to approve his budget. As we will explain, the court's finding meant that the Board lacked authority to disapprove Wetovick's budget and that the Board's action was void.[14] Moreover, when the judgment was issued, Wetovick had other claims pending: (1) a claim for a declaration that his office was entitled to all federal reimbursement funds and (2) a petition for a writ of mandamus. Both parties obviously maintained an interest in the resolution of these issues. So the case was not mooted by the ending of the county's fiscal year.

THE COURT HAD AUTHORITY TO ORDER THE BOARD TO APPROVE WETOVICK'S BUDGET REQUEST FOR A FULL-TIME ASSISTANT
Alternatively, the Board contends that even if the case was not moot, the court lacked authority in a declaratory judgment action to order the Board to approve Wetovick's budget. However, when the plaintiff's pleadings in a declaratory judgment action put the defendant on notice of the remedy sought, a trial court may order relief which is clearly within the scope of its declaratory judgment.[15] Conversely, when a party's requested relief is not clearly within the scope of a court's declaratory judgment, the court should grant such relief only for a plaintiff's concurrent or subsequent cause of action or the plaintiff's application for supplemental *310 relief under § 25-21,156.[16]
We conclude that the court's order effectively determined that the Board was without authority to disapprove Wetovick's budget request for a full-time assistant. Because the court had authority to order relief within the scope of its declaratory judgment, it could order the Board to approve Wetovick's budget.

THE STANDARD FOR DISAPPROVING AN OFFICER'S EMPLOYMENT DETERMINATION IS PROOF BY A PREPONDERANCE THAT THE OFFICER'S DECISION WAS UNREASONABLE, ARBITRARY, OR CAPRICIOUS
The Board contends that under § 23-1111, it may disapprove the terms and conditions of employment set by an elected officer if it "has any evidence"[17] that the terms and conditions are unreasonable. For its "any evidence" standard, it relies on our decision in Bass v. County of Saline,[18] in which we interpreted and applied § 23-1111.
Section 23-1111 provides, "The county officers in all counties shall have the necessary clerks and assistants for such periods and at such salaries as they may determine with the approval of the county board, whose salaries shall be paid out of the general fund of the county." (Emphasis supplied.) In Bass[19] and Sarpy Co. Pub. Emp. Assn. v. County of Sarpy,[20] we specifically held under § 23-1111, it is the duty of county officers to determine the employment terms and conditions for their necessary employees.
In Bass, the county board reduced a county court clerk's salary, set by the county judge, by $35 per month under the board's established salary schedule. The board relied on the approval requirement in § 23-1111 to argue that it could reduce the salary, even though the board did not dispute that the judge had set a reasonable and fair salary.
We rejected that argument. We stated that a county board cannot arbitrarily ignore the officer's employment determination: "To so hold would have the effect of investing the county board with full power to fix salaries of employees in county offices contrary to the expressed intent of the Legislature, and render nugatory the provision of section 23-1111 ... granting such authority to county officers."[21]
In determining the effect of the Legislature's requirement of a county board's approval, we relied on an earlier case dealing with a similar issue. That case involved the Attorney General's statutory authority to expend highway cash funds "`subject to the approval of the state engineer.'"[22] There, we stated:
"`The amount of work involved in rendering the services and the proportionate charge that should be made therefor is a matter peculiarly within the knowledge and the discretion of the attorney general. In the absence of a showing that such charges are unreasonable or *311 unconscionable, [the attorney general's] decision as to the allocation of expenditures must be controlling.'"[23]
We also quoted with approval an Arizona Supreme Court case. That court applied the same reasoning to reverse a county board's reduction of a court reporter's salary set by local judges under their statutory authority to fix such salaries subject to the board's approval.[24]
We concluded from these cases that a county officer may not arbitrarily, capriciously, or unreasonably fix a salary. But we put the burden of proof on the county board to show that the officer's salary determination was arbitrary, capricious, or unreasonable before it could reduce or disapprove a salary set by the officer: "In the absence of evidence that the salary fixed by the county [officer] is unreasonable, capricious, or arbitrary, the county board is without authority to disapprove it."[25]
But the Board contends that under Bass, the only question for the district court was whether the Board acted without any evidence that Wetovick's salary determination was unreasonable. It argues that in Bass, we required only some evidence for a board to disapprove an officer's employment determination. We disagree.
Our limitation in Bass of a county board's power to disapprove an officer's employment determination balanced the requirement of a board's approval under § 23-1111 with the broader rule that a board cannot exercise duties the Legislature has granted to county officers. A county in this state is a creature of statute and has no inherent authority. It can exercise only those powers expressly granted to it by statute or necessarily implied to carry out its expressed powers.[26] A grant of power to a county is strictly construed, and reasonable doubts regarding the existence of its power are resolved against it.[27] Accordingly, we have held that absent a legislative grant of authority, a county board has no power to perform the official duties of other officials or boards.[28]
Under these principles, we reject the Board's argument that a county board can disapprove an elected officer's employment determination if there is any evidence that the determination is unreasonable. Doing so would eviscerate the Legislature's intent in § 23-1111 that county officers have the duty to make these decisions and would shift employment decisions to county boards. In Bass, we clearly required county boards to adduce evidence that an officer's employment determination was unreasonable before disapproving it. This holding simply clarified which party had the burden of proof in these disputes. Although we did not specify a standard of proof, unless an exception *312 applies, only a preponderance of evidence is required in civil cases.[29] Monetary disputes are not an exception.[30] Thus, the obvious meaning of our holding in Bass is that under § 23-1111, unless a county board shows by a preponderance of the evidence that an elected officer's employment determination is arbitrary, capricious, or unreasonable, it lacks authority to disapprove it.

THE BOARD'S GENERAL BUDGETING AUTHORITY UNDER § 23-908 DOES NOT CONTROL A COUNTY OFFICER'S EMPLOYMENT DECISIONS
The Board also contends that the court failed to recognize its authority under § 23-908 to alter Wetovick's budget. That statute, in relevant part, provides:
The county board shall consider the budget document, as submitted to it by the budget-making authority, of the county, and may, in its discretion, revise, alter, increase or decrease the items contained in the budget, but not without first having a hearing with the office or department affected.
Relying on our decision in Meyer v. Colin,[31] the Board argues that it acted within its authority to alter Wetovick's budget as long as it did not budget his office out of existence or unduly hinder him in the performance of his duties.
Under § 23-908, an officer is not the "budget-making authority." Neb. Rev.Stat. § 23-906 (Reissue 2007) specifies that the county's budget-making authority is the county's finance committee unless the county board has instead designated one of its own members or the county comptroller. It is true that § 23-908 gives a county board authority to revise, alter, increase, or decrease the overall county budget document. But a county board may not use its authority under § 23-908 to budget an office out of existence or to unduly hinder the officer in the conduct of his or her duties.[32] And, citing Bass, we have held that § 23-908 does not control a budget dispute when a more specific statute applies.[33] The more specific statute for this budget disputewho sets salary and working conditionsis obviously § 23-1111. That conclusion is consistent with our decision in Meyer.
In Meyer, the county board had instructed officeholders and department heads to exclude expected salary raises for employees from their budget requests. If an office was short of funds needed for raises, the board required officeholders to request supplemental appropriations from a contingent account the board had established and funded. When the county assessor ignored this instruction and included the estimated cost-of-living raises for his employees in his budget, the county board deleted the raises from his budget. The assessor challenged the board's budgetary practice generally. One of his arguments on appeal was that the board's deletion of his employees' raises constituted an unwarranted interference by the board with the operation of his office. But we did not decide this issue under § 23-908, *313 because the board's action directly implicated the assessor's independence and discretion under § 23-1111:

The question presented is actually distinct from mere budgeting procedures and relates, instead, to the independence and discretion which are to be afforded an elected officer. It is clear that section 23-1111, ... requiring the approval of salaries by the County Board, does not allow the Board to arbitrarily reduce the salaries recommended by the elected officer. See Bass v. County of Saline, 171 Neb. 538, 106 N.W.2d 860. Similarly, the power of the Board to reduce requests submitted by the various offices, provided in section 23-908, ... does not give the Board the authority to budget a particular office out of existence or to unduly hinder the officer in the conduct of his duties. [The assessor] testified he was running his office shorthanded because of the cut in his requested budget. This condition was, however, essentially self-imposed. At no time did he request a supplemental appropriation. Without regard to the appropriateness of its doing so, it fully appears that the Board stood ready to make such appropriations. There is no evidence of any intent of the Board to interfere or of any actual interference by the Board in the operation of [the assessor's] office.[34]
Obviously, an issue decided on an officer's failure to prove a county board's interference with his salary determination did not pronounce any new standard of proof for a board's disapproval of an officer's salary determination. So Meyer did not disturb the central holding in Bass that a board must show the officer's determination was unreasonable, arbitrary, or capricious before it can reduce or disapprove that salary.
Moreover, the Board's contention that Meyer somehow changed this standard is refuted by our later decision in State ex rel. Garvey v. County Bd. of Comm.[35] There, we concluded that § 23-1111 did not apply to a public defender's personnel requests, because a more specific statute applied. But we repeated our holding in Bass that when § 23-1111 governs, the county board lacks authority to disapprove an officer's salary determination absent evidence that the officer acted unreasonably, capriciously, or arbitrarily. We conclude that in budget disputes between a county board and an elected officer over the officer's employment determinations, § 23-1111 controls, not § 23-908, unless a more specific statute applies to a particular officer's personnel requests.
Finally, Bass was decided in 1960. And the Legislature has not amended § 23-1111. Ordinarily, when an appellate court judicially construes a statute and that construction fails to evoke an amendment, it is presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent.[36]
Having disposed of the Board's arguments that the court applied the wrong standards in deciding this issue, we come to the main issuewhether the court erred in finding that Wetovick's budget request for a full-time secretary was reasonable.

THE DISTRICT COURT CORRECTLY FOUND THAT WETOVICK REASONABLY DETERMINED THAT HE NEEDED A FULL-TIME SECRETARY
The Board contends that Wetovick's request for a full-time secretary was *314 unreasonable because he "complained to the Board that his office did not have enough hours of clerical support to perform its child support enforcement duties, yet he demanded that the Board approve a budget for his office that would not have remedied that shortfall."[37] Alternatively, the Board contends that Wetovick's testimony that he wanted to avoid turnover in his office did not support the court's finding that his request was reasonable. It argues that the evidence failed to show that the county had a higher turnover rate with part-time employees than with full-time employees. And it argues that Wetovick admitted to interviewing two qualified applicants who wanted to work only part time. Finally, the Board argues that its part-time requirement could have resulted in Wetovick's having more hours of clerical staff per week at less cost to the county. These arguments miss the mark.
Whether a county officer has reasonably fixed the terms and conditions of employment for an assistant or clerk presents a question of fact.[38]
The Board does not contend that Wetovick's salary determination for a full-time assistant was unreasonable. And Wetovick presented ample evidence to show that he needed a full-time secretary to assist him with child support enforcement duties, to draft legal documents, and to deal with the public while he was away.
He further presented evidence that the CHARTS computer system was complicated and that using the system required extensive training, which was expensive. His secretary was required to devote 15 hours per week just to the CHARTS system and child support enforcement duties. Wetovick's admission that even with his full-time secretary, he still needed to have more hours devoted to these duties did not mean that his request for a full-time secretary was unreasonable. Even if he could have obtained slightly more hours of clerical assistance by paying two part-time employees a lower hourly salary, he could reasonably conclude that a well-trained, full-time assistant would perform the child support enforcement duties more effectively and efficiently. His secretary had already received extensive training. And part-time employees would not develop the same expertise using the system as a secretary working full time. He could also reasonably conclude that because the position required extensive training and expertise, it justified a full-time salary with benefits so that an employee would be less likely to leave his employment.
The Board's contention that Wetovick could possibly get more hours of clerical assistance per week with two part-time employees fails to consider these factors. "[T]he amount of work involved in the rendering of services and the value of compensation for those services are matters particularly within the knowledge of the county official."[39] So Wetovick's decision to continue with one full-time, experienced secretary instead of two part-time, inexperienced secretaries was within his discretion unless the Board showed that his salary determination was unreasonable.
But Wetovick also presented evidence that his salary determination was within *315 the range of salaries paid other full-time legal secretaries. As noted, the Board's chairperson conceded that the primary reason for the Board's disapproval of a salary for a full-time secretary and insistence upon part-time secretaries was to avoid paying benefits. This claim was essentially the same as its argument on appeal: i.e., that it can reduce an officer's employment determination under its general budgetary authority whenever it determines an officer could have hired someone for a lower salary or without benefits. We reject that argument.
Permitting county boards to disapprove any employment determination because the officer could have hired someone with less experience for a lower salary would shift the duty to hire assistants to the boards. The Legislature did not intend for county boards to micromanage an officer's employment decisions. Nor did it intend for county boards to dictate that an officer cannot set reasonable working conditions if the employee would be eligible for benefits. Evidence that an elected officer could hire part-time assistants, or even a full-time assistant, for a somewhat lower salary or without benefits does not alone show that the officer's choice is unreasonable.
In addition, the Board originally approved Pilakowski's salary and only disapproved it after she filed a successful grievance over the amount of her incentive buyout. Despite the Board's claim that it only initially approved Pilakowski's salary to help Wetovick get started in his office, the same cost savings existed both before and after its dispute with her. It seems odd and counterproductive that the Board would have permitted Wetovick to train Pilakowski on the CHARTS system if it had intended to disapprove her salary in the next fiscal year. Finally, the Board singled Wetovick's office out for its parttime, "no benefits" requirements. It did this despite evidence that his office's child support efforts had significantly increased reimbursement revenues for the county that would have covered the cost of a full-time secretary.
While we are aware of the effect that rising health care costs have on local governments, the Board is not handcuffed in budget disputes. Under Meyer,[40] the Board can use its general budgetary authority to reasonably reduce an officer's overall budget as long as it does not budget the office out of existence or unduly hinder the officer in performing his or her duties. But that is not what the Board did here.
In sum, our de novo review of the evidence supports the district court's finding that Wetovick was reasonable in wanting to hire a full-time secretary over two part-time assistants. It also supports the court's finding that the Board had unreasonably disapproved his budget. But because the county failed to prove that Wetovick's employment determination was unreasonable, it lacked authority to disapprove it. The Board's disapproval was therefore void. We turn next to Wetovick's cross-appeal.

ANALYSIS OF WETOVICK'S CROSS-APPEAL

WETOVICK LACKED STANDING TO OBTAIN DECLARATORY RELIEF FOR PILAKOWSKI
Wetovick argues that the court erred in failing to declare that Pilakowski was entitled to backpay and benefits as requested in his prayer for relief. We disagree.
*316 Wetovick had an obvious interest in knowing whether he could set a reasonable salary and terms of employment despite the Board's "no benefits" requirement. To the extent that Wetovick sought to clarify his relationship with the Board, Pilakowski was not a necessary party to his obtaining declaratory relief, because the court could decide the controversy without prejudicing her interests.[41] But Wetovick lacked standing to seek declaratory relief for Pilakowski, and she was not joined as a party.

THE RECORD FAILS TO SHOW THAT THE BOARD HAD EXCESS REIMBURSEMENT FUNDS TO APPROPRIATE TO WETOVICK'S BUDGET
Wetovick contends that the court erred in failing to determine that the plain language of Neb.Rev.Stat. § 43-512.05(3) (Reissue 2008) requires the Board to segregate federal reimbursement funds to be used only for enhancing child support enforcement efforts. Section 43-512.05(3) provides:
The department shall adopt and promulgate rules and regulations regarding the rate and manner of reimbursement for costs incurred in carrying out [§§ 43-512 to 43-512.10 and 43-512.12 to 43-512.18], taking into account relevant federal law, available federal funds, and any appropriations made by the Legislature. Any reimbursement funds shall be added to the budgets of those county officials who have performed the services as called for in the cooperative agreements and carried over from year to year as required by law.
The federal Child Support Enforcement Act[42] provides participating states with reimbursement funds for a percentage of their expenditures in operating a federally approved plan to improve the establishment and enforcement of support obligations.[43] Nebraska's § 43-512.05 is one of the state statutes that implement the federal requirements for receiving these funds. Section 43-512.05(2) provides:
The department and the governing board of the county, county attorney, or authorized attorney may enter into a written agreement regarding the determination of paternity and child, spousal, and medical support enforcement for the purpose of implementing [§§ 43-512 to 43-512.10 and 43-512.12 to 43-512.18]. Paternity shall be established when it can be determined that the collection of child support is feasible.
Many of the statutes to which subsection (2) refers impose mandatory duties on a county attorney or an authorized attorney. These duties are also required under the Department's "cooperative reimbursement agreement" with the county board and county attorney. The cooperation agreement also includes other duties that are required by other Nebraska statutes or federal regulations. But whether the Department's cooperation is with a county attorney or an authorized attorney, many of the duties required under § 43-512.05(2) and the cooperation agreement must be performed by a law enforcement official authorized to prosecute claims on behalf of the State. And the Board did not show that a county employee outside of Wetovick's office performed any of the contract's duties.
As noted, § 43-512.05(3) provides that "[a]ny reimbursement funds shall be added to the budgets of those county officials who have performed the services as called for in the cooperative agreements and carried over from year to year as required by *317 law." (Emphasis supplied.) The Board concedes that subsection (3) "may appear to direct counties to add reimbursement funds to their county attorneys' budgets."[44] But it contends that the statute actually directs that only county boards be reimbursed because county board members are the only county officials who appropriate funds for child support enforcement activities.
The cooperation agreement provides that the Department will reimburse the county for a percentage of its expenditures under the agreement, including employees' salaries and benefits, to the extent that those employees were performing child support enforcement duties. To receive reimbursement funds, the Department required documentation for the time employees spent performing the agreement's duties. For that prorated portion of their salaries and benefits, the Department reimbursed the county at the rate allowed under federal statutes.[45]
Obviously, if the county board has already appropriated sufficient funding to the county attorney's office to pay the necessary salaries for performing the duties under the cooperation agreement, then additionally requiring the board to appropriate all federal reimbursement funds to the county attorney's budget would result in a double reimbursement. Thus, reading § 43-512.05(3) literally could lead to an absurd result in some circumstances.
But when subsections (2) and (3) are read together, we believe the Legislature intended to avoid this result by permitting the Department to also contract with the county board. So under § 43-512.05, to the extent that the county board has already appropriated sufficient funding to pay the necessary salaries and expenses for performing child support enforcement duties, we conclude that the Board is entitled to deposit federal reimbursement funds into its general fund. But for any reimbursement funds that the county is not entitled to keep, § 43-512.05(3) plainly requires such funds to be carried over from year to year in the county attorney's budget when his or her office is performing all of the child support enforcement duties.
Clearly, the county would not have received the reimbursement funds if Wetovick's office had not documented the time he and Pilakowski spent on child support enforcement duties. But we do not have those documents in the record. Nor do we have the Department's reimbursement records. We conclude that the record is insufficient for us to determine whether Wetovick was entitled to have any of the reimbursement funds set aside for his office.

ATTORNEY FEES
Finally, Wetovick contends that the court erred in failing to award him attorney fees. He argues that § 25-21,158 permits an award of costs in declaratory judgment actions and that costs include attorney fees. We disagree.
A party may recover attorney fees and expenses in a civil action only when a statute permits recovery or when the Nebraska Supreme Court has recognized and accepted a uniform course of procedure for allowing attorney fees.[46]
It is true that § 25-21,158 gives a court discretion to award costs in a declaratory judgment action. But in the only case in which we have applied this statute, we awarded only costs, not attorney *318 fees.[47] The term "costs" in a statute is not generally understood to include "attorney fees."[48] In declaratory judgment cases in which attorney fees were allowed, the parties' dispute involved other statutes that permitted the recovery of attorney fees.[49] But in declaratory judgment cases in which we concluded that other statutes authorizing attorney fees did not apply, we determined that the party was not entitled to attorney fees.[50] We have reached the same conclusion after determining that a contract provision providing for attorney fees was void as against public policy.[51] Clearly, under § 25-21,158, we have not interpreted "costs" to include attorney fees or recognized a uniform course of procedure generally permitting attorney fees to be taxed as costs. So without another source of statutory authority permitting attorney fees to be taxed as costs, the prevailing party cannot recover attorney fees in a declaratory judgment action. This also is the general rule in other jurisdictions.[52]
Wetovick relies on our decision in Smeal Fire Apparatus Co. v. Kreikemeier.[53] His reliance is misplaced. There, we stated that "[c]osts, including reasonable attorney fees, can be awarded in a contempt proceeding."[54] Attorney fees in contempt cases fall under a court's inherent power to do all things necessary to enforce its judgment.[55] But outside of enforcing orders and judgments, we have extended a court's inherent power to award attorney fees only in a narrow circumstance: when a party's conduct during the course of litigation is so vexatious, unfounded, and dilatory that it amounts to bad faith.[56] And we have specifically declined to extend that exception further.[57] Obviously, the court correctly found that the exception does not apply here, and the court was not enforcing its judgment in a contempt proceeding. Because no statute or uniform course of action permitted attorney fees to be taxed as costs in this action, this assignment is without merit.

CONCLUSION
We conclude that the case was not moot at the time of judgment. We conclude *319 that disputes over a county officer's employment decisions are controlled by § 23-1111, not a county board's general budgeting authority under § 23-908. In disputes under § 23-1111, a county board cannot disapprove an officer's employment determination unless it proves by a preponderance of the evidence that the officer's decision was arbitrary, capricious, or unreasonable.
We conclude that the court properly found that Wetovick reasonably needed a full-time secretary. Because the Board failed to prove that his decision was unreasonable, it lacked authority to disapprove Wetovick's budget request for his secretary. And because the court had authority to order relief within the scope of its declaratory judgment, it could order the Board to approve Wetovick's budget.
Regarding Wetovick's cross-appeal, we conclude that he lacked standing to seek declaratory relief on behalf of his secretary, who was not joined as a party. We conclude that the record is insufficient to determine whether Wetovick was entitled to have the Board set aside federal reimbursement funds for his office's child support enforcement duties. Finally, we conclude that § 25-21,158 is not statutory authority for taxing attorney fees as costs and that no uniform course of procedure generally permitted the court to tax attorney fees as costs in this declaratory judgment action. Accordingly, the court correctly denied the claims raised by Wetovick's cross-appeal.
AFFIRMED.
HEAVICAN, C.J., dissenting.
I join in the majority's conclusion that this appeal is not moot, as well as its decision with respect to Wetovick's cross-appeal. But I dissent from the majority's conclusion that the Board lacked the authority to disapprove Wetovick's budget request.
The majority's opinion relies heavily on this court's decision in Bass v. County of Saline,[1] as well as subsequent cases discussing and interpreting Bass. In the present case, the majority interprets Bass and subsequent cases, as well as Neb.Rev.Stat. § 23-1111 (Reissue 2007), to hold that "a county officer may not arbitrarily, capriciously, or unreasonably fix a salary. But we put the burden of proof on the county board to show that the officer's salary determination was arbitrary, capricious, or unreasonable before it could reduce or disapprove a salary set by the officer."
But § 23-1111 states no such standard. That section provides that "[t]he county officers in all counties shall have the necessary clerks and assistants for such periods and at such salaries as they may determine with the approval of the county board, whose salaries shall be paid out of the general fund of the county." This language plainly states only that county officers should have necessary clerks and assistants as the officer determines with the approval of the county board.
In this case, the Board is the budget-making authority for the county. Not only does § 23-1111 give the Board some authority over the salaries of employees of county officers, but Neb.Rev.Stat. § 23-908 (Reissue 2007) gives the Board the discretionary authority to "revise, alter, increase or decrease the items contained in the budget," subject to a hearing for those affected offices. When considered together, it is clear to me that the Board retains authority over the budgets of its county officials.
The statutes in this case are not conflicting; rather, the problem is Bass. The standard *320 set forth in that case, which is not supported by the plain meaning of the statute it purports to interpret, creates a conflict where there is otherwise none namely, that a board cannot arbitrarily reduce a salary under § 23-1111, but nevertheless retains discretionary authority to revise budgets under § 23-908. This conflict makes it difficult at best for budget-making authorities in counties such as Nance County to adequately budget. In my view, Bass wrongly interprets § 23-1111 and should be overruled.
Instead, I would adopt the standard set forth in Meyer v. Colin.[2] In Meyer, we noted the authority of the officer to set salaries and further explained that under § 23-908, "the Board [does not have] the authority to budget a particular office out of existence or to unduly hinder the officer in the conduct of his duties."[3] The trial court in this case should be focused on whether the Board "unduly hindered" the officer, here the county attorney, from running his office. The burden should be on the county attorney, as the petitioner, to show that the Board has overstepped its bounds.[4]
Finally, I note that I agree with the majority insofar as its holding provides that a county board cannot infringe upon the power of a county official to run his or her office. For example, only the elected officer can decide whether to employ part-time or full-time employees. While I would conclude that a county board ultimately sets the budgetary policy of a county, in my view, this authority must be exercised carefully because it exists in harmony with the power of the county officer to set the salaries for his or her office (subject to board approval). I would affirm that power of the county officer to run his or her office as he or she sees fit, with that power subject to legitimate budgetary constraints encountered by the county board.
NOTES
[1] Neb.Rev.Stat. §§ 25-21,149 to 25-21,164 (Reissue 2008).
[2] Homestead Estates Homeowners Assn. v. Jones, 278 Neb. 149, 768 N.W.2d 436 (2009).
[3] See City of Elkhorn v. City of Omaha, 272 Neb. 867, 725 N.W.2d 792 (2007).
[4] Homestead Estates Homeowners Assn., supra note 2.
[5] Id.
[6] Evertson v. City of Kimball, 278 Neb. 1, 767 N.W.2d 751 (2009).
[7] Id.
[8] Id.
[9] Nebraska Coalition for Ed. Equity v. Heineman, 273 Neb. 531, 731 N.W.2d 164 (2007).
[10] Id.
[11] Myers v. Nebraska Invest. Council, 272 Neb. 669, 724 N.W.2d 776 (2006).
[12] In re 2007 Appropriations of Niobrara River Waters, 278 Neb. 137, 768 N.W.2d 420 (2009).
[13] See id.
[14] See, Eriksen v. Ray, 212 Neb. 8, 321 N.W.2d 59 (1982); State, ex rel. Allen, v. Miller, 138 Neb. 747, 295 N.W. 279 (1940).
[15] See, e.g., Hoiengs v. County of Adams, 245 Neb. 877, 516 N.W.2d 223 (1994); Heimbouch v. Victorio Ins. Serv., Inc., 220 Neb. 279, 369 N.W.2d 620 (1985); Dixon v. O'Connor, 180 Neb. 427, 143 N.W.2d 364 (1966).
[16] See, Standard Fed. Sav. Bank v. State Farm, 248 Neb. 552, 537 N.W.2d 333 (1995); S.N. Mart, Ltd. v. Maurices Inc., 234 Neb. 343, 451 N.W.2d 259 (1990).
[17] Brief for appellants at 19 (emphasis in original).
[18] Bass v. County of Saline, 171 Neb. 538, 106 N.W.2d 860 (1960).
[19] See id.
[20] Sarpy Co. Pub. Emp. Assn. v. County of Sarpy, 220 Neb. 431, 370 N.W.2d 495 (1985).
[21] Bass, supra note 18, 171 Neb. at 541, 106 N.W.2d at 863.
[22] Id. at 542, 106 N.W.2d at 863, quoting State, ex rel. Johnson, v. Tilley, 137 Neb. 173, 288 N.W. 521 (1939).
[23] Id., quoting State, ex rel. Johnson, supra note 22 (emphasis supplied).
[24] Bass, supra note 18, citing Powers v. Isley, 66 Ariz. 94, 183 P.2d 880 (1947).
[25] Id. at 543, 106 N.W.2d at 864 (emphasis supplied).
[26] State ex rel. Johnson v. County of Gage, 154 Neb. 822, 49 N.W.2d 672 (1951) (citing cases). See, also, L.J. Vontz Constr. Co. v. City of Alliance, 243 Neb. 334, 500 N.W.2d 173 (1993); Thiles v. County Board of Sarpy County, 189 Neb. 1, 200 N.W.2d 13 (1972); Bass, supra note 18.
[27] Guenzel-Handlos v. County of Lancaster, 265 Neb. 125, 655 N.W.2d 384 (2003); DLH, Inc. v. Lancaster Cty. Bd. of Comrs., 264 Neb. 358, 648 N.W.2d 277 (2002); State ex rel. Johnson, supra note 26.
[28] See, e.g., Sarpy Co. Pub. Emp. Assn., supra note 20; Speer v. Kratzenstein, 143 Neb. 311, 12 N.W.2d 360 (1943).
[29] See, e.g., Pallas v. Dailey, 169 Neb. 533, 100 N.W.2d 197 (1960); Keiserman v. Lydon, 153 Neb. 279, 44 N.W.2d 513 (1950).
[30] See Nebraska Legislature on behalf of State v. Hergert, 271 Neb. 976, 720 N.W.2d 372 (2006), citing Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).
[31] Meyer v. Colin, 204 Neb. 96, 281 N.W.2d 737 (1979).
[32] State ex rel. Garvey v. County Bd. of Comm., 253 Neb. 694, 573 N.W.2d 747 (1998); Meyer, supra note 31.
[33] See State ex rel. Agricultural Extension Service v. Miller, 182 Neb. 285, 154 N.W.2d 469 (1967).
[34] Meyer, supra note 31, 204 Neb. at 102, 281 N.W.2d at 741-42 (emphasis supplied).
[35] State ex rel. Garvey, supra note 32.
[36] Lagemann v. Nebraska Methodist Hosp., 277 Neb. 335, 762 N.W.2d 51 (2009).
[37] Brief for appellants at 22.
[38] See, Tolliver v. Visiting Nurse Assn., 278 Neb. 532, 771 N.W.2d 908 (2009); Stueve v. Valmont Indus., 277 Neb. 292, 761 N.W.2d 544 (2009); In re Guardianship & Conservatorship of Cordel, 274 Neb. 545, 741 N.W.2d 675 (2007); Plath v. Brunken, 102 Neb. 467, 167 N.W. 567 (1918); 18B Am. Jur. 2d Corporations § 1661 (2004).
[39] State ex rel. Garvey, supra note 32, 253 Neb. at 699, 573 N.W.2d at 750.
[40] See Meyer, supra note 31.
[41] See, Reed v. Reed, 277 Neb. 391, 763 N.W.2d 686 (2009); Dunn v. Daub, 259 Neb. 559, 611 N.W.2d 97 (2000).
[42] See 42 U.S.C. §§ 651 to 669b. (2006).
[43] See 42 U.S.C. §§ 651 and 655.
[44] Reply brief for appellant at 19.
[45] See 42 U.S.C. § 655(a)(2).
[46] Evertson, supra note 6.
[47] Phillips v. Phillips, 163 Neb. 282, 79 N.W.2d 420 (1956).
[48] See, Oliver v. Lansing, 57 Neb. 352, 77 N.W. 802 (1899); 1 Robert L. Rossi, Attorneys' Fees § 7:2 (2d ed. 1995) (citing cases).
[49] See, e.g., National Am. Ins. Co. v. Continental Western Ins. Co., 243 Neb. 766, 502 N.W.2d 817 (1993); Bituminous Casualty Corp. v. Deyle, 234 Neb. 537, 451 N.W.2d 910 (1990); Coleman v. Kahler, 17 Neb.App. 518, 766 N.W.2d 142 (2009); Alderman v. County of Antelope, 11 Neb.App. 412, 653 N.W.2d 1 (2002).
[50] See, e.g., State Farm Mut. Auto. Ins. Co. v. Royal Ins. Co., 222 Neb. 13, 382 N.W.2d 2 (1986); Dairyland Ins. Co. v. Kammerer, 213 Neb. 108, 327 N.W.2d 618 (1982); Ehlers v. Campbell, 159 Neb. 328, 66 N.W.2d 585 (1954); State ex rel. Ebke v. Board of Educational Lands & Funds, 159 Neb. 79, 65 N.W.2d 392 (1954).
[51] Quinn v. Godfather's Investments, 217 Neb. 441, 348 N.W.2d 893 (1984).
[52] See 1 Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance Companies and Insureds § 8:14 (5th ed. 2007) (citing cases).
[53] Smeal Fire Apparatus Co. v. Kreikemeier, 271 Neb. 616, 715 N.W.2d 134 (2006).
[54] Id. at 625, 715 N.W.2d at 142.
[55] See Kasparek v. May, 174 Neb. 732, 119 N.W.2d 512 (1963), overruled on other grounds, Smeal Fire Apparatus Co. v. Kreikemeier, 279 Neb. 661, ___ N.W.2d ___ (2010).
[56] See Holt County Co-op. Assn. v. Corkle's, Inc., 214 Neb. 762, 336 N.W.2d 312 (1983).
[57] See Quinn, supra note 51.
[1] Bass v. County of Saline, 171 Neb. 538, 106 N.W.2d 860 (1960).
[2] Meyer v. Colin, 204 Neb. 96, 281 N.W.2d 737 (1979).
[3] Id. at 102, 281 N.W.2d at 741.
[4] See, e.g., Tipp-It, Inc. v. Conboy, 257 Neb. 219, 596 N.W.2d 304 (1999); Jensen v. Universal Underwriters Ins. Co., 208 Neb. 487, 304 N.W.2d 51 (1981); County of Banner v. Young, 184 Neb. 546, 169 N.W.2d 280 (1969). See, also, 22A Am. Jur. 2d Declaratory Judgments § 239 (2003).