IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


COHRS V. BRUNS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


DAN COHRS, APPELLEE,

V.

LANA SUE BRUNS, APPELLANT.


Filed March 22, 2016.    No. A-15-222.


Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed.

Stephanie Weber Milone for appellant.

Jon J. Puk, of Woodke & Gibbons, P.C., L.L.O., for appellee.


MOORE, Chief Judge, and IRWIN and BISHOP, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Lana Sue Bruns appeals from three separate orders by the district court of Douglas County. The first order, upon the court's own motion, appointed a guardian ad litem and attorney for Lana and Dan Cohrs' minor child, Karsten. The second order found Dan in contempt by failing to name Lana as the irrevocable beneficiary on a life insurance policy sufficient to fund the remaining balance of child support as directed by a decree of paternity, but found that he was not in contempt for violating the parenting plan for summer 2014. The third order found Lana in contempt for preventing Dan from exercising his parenting time at various times and for violating the court's prior orders to facilitate continued counseling for Karsten. This order imposed various sanctions on Lana. Finding no abuse of discretion by the court, we affirm.

- 1 -

## II. BACKGROUND

### 1. ORIGINAL PATERNITY DECREE

Dan and Lana are the parents of a daughter Karsten born in June 2003. On March 10, 2005, the district court entered a paternity decree which, in part, established that Dan was Karsten's biological father, set forth custodial and visitation rights, and ordered Dan to pay child support.

The parties by agreement were granted joint legal custody of Karsten, with Lana being awarded primary physical possession of Karsten subject to Dan's visitation rights. Also by agreement of the parties, the paternity decree granted Dan visitation every other weekend from Friday at 2:00 p.m. until Sunday at 8:00 p.m. During weeks without weekend visitation, the decree granted Dan visitation during his rotating day off. The decree further granted each party two weeks of uninterrupted visitation with the child each summer and specified that "(Dan) shall advise (Lana) on or before May 1st of each year of the two weeks he intends to use for said vacation time."

Additionally, the paternity decree ordered Dan to maintain a life insurance policy sufficient in an amount to fund his unpaid child support obligation and to name Lana as the irrevocable beneficiary. The decree further provided that upon request by Lana, Dan was required to submit verification to Lana of such policy.

### 2. 2011 TEMPORARY ORDER

Following a motion for temporary orders filed by Lana and a motion for appointment of a counselor by Dan, the district court entered a Temporary Order on October 31, 2011. This order, in part, placed various restrictions on Dan's visitation, granted both parties a "right of first refusal," provided that Karsten have access to a cell phone during visits with Dan, and established that the parties and Karsten shall attend family counseling with Dr. Tom Haley.

### 3. 2014 ORDER OF MODIFICATION AND AMENDED AND SUPPLEMENTAL ORDER OF MODIFICATION

On February 25, 2014, after the parties filed cross-motions to modify the paternity decree and a trial occurred, the district court filed an Order of Modification. On March 6, Dan filed a motion for clarification and for new trial. On March 7, Lana filed a motion to alter or amend the modification order. A hearing was held on these motions on April 24. The court issued a letter to the parties' counsel on May 13, wherein the court denied Dan's motions and sustained in part and denied in part Lana's motion. However, the written order was not entered until the July 24 Amended and Supplemental Order of Modification of Decree was filed. On July 30, 2014, an Order Nunc Pro Tunc was entered, attaching an exhibit containing child support calculations to the Amended and Supplemental Order of Modification.

Through these orders, the court concluded that a continuation of joint legal and physical custody with primary possession in Lana was no longer in the best interests of Karsten. Rather, the court found that the best interests of Karsten would be better served by granting Lana sole custody of Karsten while granting Dan expanded, significant parenting time.

Dan was granted parenting time every Wednesday after school, or 3:30 p.m. if no school, and continuing until 8:30 p.m. the same evening. His weekend parenting time during the school year was expanded from the original paternity decree, to include parenting time every other weekend from Friday after school at 3:30 p.m. until returning Karsten to school Monday morning at 7:30 a.m. Dan's summer parenting time was expanded to one-half of Karsten's school summer vacation, alternating the first and second half in even and odd years. Specifically, Lana was granted the first half of summer break in even years and the second half in odd years. Holiday parenting time and Karsten's birthday were also further revised and specified.

The right of first refusal and various restrictions on Dan's parenting time contained in the 2011 Temporary Order were eliminated by the court in its Amended and Supplemental Order of Modification.

The court in its amended order determined that it would be in the best interests of Karsten to continue counseling with Haley. The court ordered both parties to facilitate the beginning of the counseling process and to continue counseling at a pace recommended by Haley, but for a period not to last more than 1 year from the date of the amended order.

Lana and Dan subsequently appealed the Amended and Supplemental Order of Modification. Lana appealed, in part, the increase and modification of Dan's parenting time, the termination of various restrictive provisions impacting Dan's parenting time, the calculation of child support, and the order to continue Karsten's counseling with Haley. Dan on cross appeal asserted that the court erred in not granting his request for Wednesday parenting time to be extended to include until Thursday morning.

In a memorandum opinion, *Cohrs v. Bruns*, No. A-14-740, 2015 WL 8267953 (Neb. App. Dec. 8, 2015) (selected for posting to court Web site), we determined that the district court erred in its calculations pertaining to child support, and we reversed and remanded those portions of the Amended and Supplemental Order of Modification for further proceedings. However, we affirmed all other provisions of the modification orders, including the adjustments to Dan's parenting time. The issue pertaining to Karsten's one year of additional counseling with Haley became moot during the pendency of this prior appeal.

### 4. CONTEMPT MOTIONS

During the pendency of the prior appeal, both parties filed contempt motions.

On August 13, 2014, Lana filed her eleventh application and affidavit requesting that Dan be found in contempt. In support of her application, Lana asserted that Dan had failed to obtain a life insurance policy which named Lana as the irrevocable beneficiary in an amount sufficient to fund his unpaid child support obligation as required by the original paternity decree. Lana also alleged that, notwithstanding multiple requests by her, Dan failed to provide her with verification that he has maintained such an insurance policy, also in violation of the original decree. Instead, in response to Lana's most recent request, Dan "only provided a copy of what purports to be an application for change of beneficiary designation dated June 23, 2014 allocating 80% of the proceeds of an unspecified life insurance policy to (Lana) and allocating 20% of the proceeds of that same policy to the parties' minor daughter, Karsten."

Lana also alleged in her contempt motion that Dan failed to comply with court orders regarding her parenting time, including during the summer of 2014; together with other provisions that are not at issue in this appeal. Lana concluded her application by requesting the court award attorney fees and costs incurred in connection with this matter.

On November 5, 2014, Dan filed his twelfth application for an order to show cause why Lana should not be held in contempt. He alleged that Lana willfully and intentionally denied Dan his parenting time on various dates. These dates included, but were not limited to, two Wednesday visitations on October 22 and 29, 2014 and one weekend visitation from Friday, October 24 until Monday, October 27, 2014, together with Halloween; October 31, 2014. Dan also asserted that Lana denied phone contact between Dan and Karsten for the past three years.

Dan further alleged that Lana interfered with Karsten attending appointments with Haley as directed by the Amended and Supplemental Order of Modification. Specifically, Dan alleges that due to Lana continually denying his visitation, he was unable to continue facilitating Karsten's counseling sessions with Haley. Dan concluded his application by requesting the court award attorney fees and costs incurred in connection with this matter.

### 5. COURT'S ORDER ON ITS OWN MOTION

On October 8, 2014, the district court filed an order on its own motion in which the court appointed a guardian ad litem and an attorney for Karsten. In its order, the court described how these appointments would be in the best interests of Karsten, detailing the "suffering and irreparable damage" to the child the court had increasingly witnessed over the last year of proceedings. Specifically, the court mentioned Lana's tendency to call Karsten as a witness to support her motions. At the most recent hearing preceding this order, the child had testified in chambers with the attorneys and without the parties present. The court noted that the child began to cry after the interaction between the attorneys became heated. The court immediately ended the hearing and removed Karsten. As a result of occurrences such as this, the court determined it was in the best interests of Karsten for a guardian ad litem and attorney to be appointed for her. In addition to these appointments, the order instructed the guardian ad litem "to immediately search for an appropriate counselor or psychologist for the minor child to begin treatment." The court ordered the parties to deposit funds for the payment of these appointees and coverage of treatment costs. Lastly, the order clarified that these appointments were limited to "the current open applications for orders to show cause filed by each party and for any future such applications which may be filed by either party."

### 6. TRIAL ON CONTEMPT MOTIONS

Trial was held on both contempt motions on September 23, 2014 and January 12, 2015.

#### (a) Evidence Regarding Lana's Contempt Motion

Evidence was presented showing that since the original 2005 paternity decree, Dan had maintained life insurance initially naming *Karsten* as the beneficiary, covering future child support in case of his death. Following Lana's request that Dan change the beneficiary to her made prior to the contempt action, Dan altered the beneficiary status of the insurance, identifying Karsten as

20% beneficiary and Lana as 80% beneficiary. Dan testified that he believed this alteration sufficiently satisfied the life insurance requirement under the original decree.

The parties provided conflicting testimony at trial regarding the circumstances surrounding the 2014 summer parenting time. Both parties testified to having followed the parenting time provisions contained within the February 25, 2014 Modification Order from the date of entry until approximately the start of Karsten's summer vacation in May 2014. As specified within the February 25, 2014 Modification Order (and later duplicated and confirmed in the July 24, 2014 amended order), Lana was to have the first half of summer break in 2014, and Dan the second half. School started for Karsten in late August 2014.

Due to the various motions filed by the parties after the February 2014 modification order, there was confusion and a dispute between the parties regarding whether the 2005 paternity decree or the February 2014 modification order was controlling for the 2014 summer parenting time.

While these motions were pending, Lana advised Dan of her intent to have summer parenting time with Karsten from August 3 through August 23. Lana had requested these days off from her employer in November or December of 2013, the timing of which was required by company policy.

Dan testified that prior to May 1, he provided notice via email to Lana of his intent to exercise his two-week uninterrupted summer parenting time from July 10 through July 24, 2014. Dan provided this notice (as required under the original decree) due to the confusion and dispute between the parties that existed regarding which order controlled. Lana denied having received the notice from Dan.

In an effort to clarify summer visitation, Dan filed motions in June which eventually resulted in the court's entry of the July 24, 2014 amended order, confirming the split summer arrangement established in the February 25 Modification Order.

Following Dan's parenting time with Karsten from July 10 through July 24, 2014 (as previously requested), Dan intended to retain possession of Karsten for the remaining balance of the second half of summer, in accordance with the February and July orders. The record established that the second half of summer vacation under these orders was from July 10 or 11 until Karsten returned to school in late August. Therefore, Dan believed he was entitled to keep possession of Karsten until late August.

Lana, on the other hand, maintained that the original decree was still controlling. Lana attempted to convince Karsten to leave Dan's home at 2:00 a.m. on July 23, 2014. Lana drove from Omaha, Nebraska to Dan's home in Logan, Iowa with the intent of removing Karsten. Lana was unsuccessful in her attempt to remove Karsten from Dan's home.

Dan also testified that his second half of summer visitation was cut slightly short. Around August 18 or 19, 2014, a week before the end of Karsten's summer vacation, Dan took Karsten to her school for volleyball practice. Lana arrived at the practice and removed Karsten from Dan's possession for the remainder of the summer. Karsten testified that she was mad at Dan and voluntarily left with Lana. This conflicted with Dan's testimony that Lana had "grabbed" Karsten, told Dan that Karsten was not going with him, and told him to leave.

(b) Evidence Regarding Dan's Contempt Motion

Dan testified regarding Lana's interference with his parenting time. When attempting to pick up Karsten on October 22 and 29, 2014 for Wednesday parenting time, Dan claims that Lana was at the school and took Karsten with her on both occasions. Dan testified that Lana was aware that Dan was present to pick up Karsten, but she took Karsten home with her anyway.

Lana also refused to let Karsten go with Dan after school for his scheduled weekend parenting time that was to occur from Friday, October 24 until Monday, October 27, 2014. Beyond these specific instances of interference by Lana when Dan was present to pick up Karsten at school, Dan testified that from August 2014 through the time of the final contempt hearing on January 12, 2015, he had not seen his daughter due to Lana's interference. Further, Dan testified that he was unable to communicate with Karsten over the phone while she was in Lana's custody for over three years.

Dr. Haley had been seeing the child throughout the pendency of the modification proceedings during Dan's Wednesday visitation. Therefore, as a result of Lana's alleged interference, Karsten has been unable to attend counseling.

According to Dan, Lana told him that she was preventing him from picking Karsten up at school because Lana was unhappy with the court's ruling, and she was going to "change it up," claiming that "Karsten no longer wants to go with (Dan)" during these times. During these instances, Lana would yell at Karsten to tell Dan that she did not want to go with him.

Lana testified that she did not intentionally or willfully interfere with Dan's parenting time, prevent his ability to contact Karsten, or inhibit the facilitation of Karsten's counseling. Lana denied having said she did not want Karsten to visit Dan or that she was going to stop Dan from exercising his parenting time with Karsten. Rather, Lana testified that it was Karsten who indicated a desire to not attend parenting time with Dan. Lana testified that she was not concerned with Dan's parenting time, except for the presence of Dan's wife and children during the parenting time due to allegations of past name-calling towards Karsten.

Lana admitted that she would be present at Karsten's school on Dan's parenting time days, but that she did this in case Dan failed to pick up Karsten, or if Karsten refused to get into his car. Lana testified that Dan has previously failed to pick up Karsten for his Wednesday parenting time. Further, Lana claims that Karsten would not go with Dan even if he showed up at school. Karsten testified to refusing to leave with Dan because of statements she claims he made that made her feel like he did not love her. Karsten also purportedly sent an email to Dan using Lana's phone, accusing him of having lied about what occurred during these school pickups.

With regard to Karsten's counseling, Lana claimed to be unaware that Karsten had been attending counseling sessions with Haley during Dan's Wednesday parenting time, and that neither Dan nor Haley had contacted her about the counseling. However, she did admit that she had not scheduled any appointments for Karsten with Haley.

Lastly, concerning phone contact, Lana testified that she would not answer when Dan called her phone. However, Lana testified that Karsten has her own cell phone, Karsten knows Dan's number, and that she "absolutely" would allow Karsten to call Dan back, but she cannot force her to talk with him. Lana claims Karsten had recently stopped communicating with Dan via

phone, and that she refused to answer her phone when Dan called. Lana testified that while she has ongoing concerns regarding parenting time contact between Karsten and Dan, she was not concerned with their telephone contact.

### 7. DISTRICT COURT'S CONTEMPT ORDERS

On February 18, 2015, the district court entered two separate orders on the contempt motions. With respect to Lana's contempt proceeding against Dan, the court found by clear and convincing evidence that Dan was "technically" in willful contempt. The court noted that Dan has maintained a life insurance policy as required by the decree although acceptable verification of the policy and the fact that Lana is named irrevocable beneficiary has not been provided. Dan was sentenced to 48 hours in jail, but the court allowed Dan to purge the jail time by providing proof of the existence of a life insurance policy which named Lana as irrevocable beneficiary on or before April 1, 2015.

With regard to Lana's allegations that Dan violated Lana's parenting time in summer 2014, the court concluded that Lana failed to satisfy by clear and convincing evidence that Dan's actions were willfully contemptuous behavior. In reaching this conclusion, the court found that misunderstandings, conflicts, and disagreements occurred as to which parenting order was to be followed, that Lana exercised parenting time as established in the February 25, 2014 Order of Modification for several months until summer arrived at which time she "unilaterally refused" to follow the parenting time set forth in the Order of Modification and demanded that parenting time be regulated by the previous orders. The court did not award attorney fees to Lana.

With respect to Dan's contempt proceeding against Lana, the court found that Dan demonstrated, by clear and convincing evidence "and even by evidence beyond a reasonable doubt," that Lana intentionally took willful contemptuous actions to prevent Dan from exercising his parenting time on the various occasions set forth in Dan's application. In support of this conclusion, the court found that on these occasions, Lana appeared personally at Karsten's school for the sole purpose of interfering with Dan's parenting time. The court further found that there was "no justifiable reason whatsoever" on any of the dates in question for Lana to be present at the school. The court further found Lana in contempt for violating the court's prior order requiring both parties to facilitate counseling of Karsten through Lana's actions in denying Dan parenting time.

Lana was sentenced to 48 hours in jail to commence immediately, but the court allowed Lana to purge the jail time by writing two statements 100 times each ("I love my child more than I hate her father" and "I will never disobey an Order of this Court again") and providing the statements to the court. The court further sentenced Lana to 30 days in jail beginning July 31, which could be purged if between the date of the order and July 31, Lana did not make disparaging remarks or negative comments about Dan in Karsten's presence, did not interfere with Dan's parenting time, stayed beyond one mile of Karsten's school on the days Dan was to have parenting time with Karsten, and took reasonable and necessary steps requested by the guardian ad litem and made sure Karsten attended scheduled appointments with her psychiatrist. The court ordered that Lana pay $1,500 in attorney fees directly to Dan's attorney no later than March 6. As further sanctions for Lana's contemptuous actions, the court awarded Dan additional temporary parenting

time with Karsten every weekend between the date of the order through the weekend of May 15, 2015. Lastly, the court sentenced Lana to serve an additional 48 hours in jail, but allowed Lana to purge this sentence by writing and delivering a letter to Karsten's school explaining the modified parenting time and that she is not to be present at school during Dan's pick up and drop off times.

Lana has timely appealed.

## III. ASSIGNMENTS OF ERROR

Lana assigns, restated, that the district court erred when it (1) appointed a guardian ad litem and attorney for Karsten on its own motion without notice and the opportunity for a hearing in violation of Lana's right to due process, (2) failed to award her attorney fees in connection with its finding that Dan was in contempt for not complying with the life insurance provision of the decree, (3) failed to find Dan in contempt for interfering with Lana's parenting time during summer 2014, and (4) found Lana in contempt, imposed sanctions on her, awarded Dan additional parenting time, and ordered her to pay attorney fees.

## IV. STANDARDS OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion. *In re Interest of Zachary D. & Alexander D.*, 289 Neb. 763, 857 N.W.2d 323 (2015).

The district court's decision on a request for attorney fees is reviewed de novo on the record and will be affirmed in the absence of an abuse of discretion. *Carter v. Carter*, 276 Neb. 840, 758 N.W.2d 1 (2008). This standard of review applies regardless of whether the court awarded or denied attorney fees. See *Vlach v. Vlach*, 286 Neb. 141, 835 N.W.2d 72 (2013).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

## V. ANALYSIS

### 1. ORDER APPOINTING GUARDIAN AD LITEM AND ATTORNEY

Lana argues that the district court erred in appointing Karsten a guardian ad litem and attorney, on the court's own motion, without notice and the opportunity for a hearing in violation of Lana's right to due process.

Neb. Rev. Stat. § 42-358 authorizes a court to appoint an attorney or guardian ad litem to protect the interests of minor children and allows the attorney or guardian ad litem to recover his or her fees. *Mitchell v. French*, 267 Neb. 656, 676 N.W.2d 361 (2004). See, also, *Mathews v. Mathews*, 267 Neb. 604, 610, 676 N.W.2d 42, 50 (2004). The appointment of a guardian ad litem or attorney under this authority is entrusted to the discretion of the court. See *Chalupa v. Chalupa*, 220 Neb. 704, 371 N.W.2d 706 (1985). Such an appointment may be done at the request of a party or upon the court's own motion. See *Ford v. Ford,* 191 Neb. 548, 549, 216 N.W.2d 176, 177 (1974) (district court, either on motion or sua sponte, may appoint legal counsel to protect the interests of any minor children of the parties to a divorce action).

Lana does not challenge the ultimate determination that a guardian ad litem and attorney was necessary for the protection of Karsten's best interests. Rather, she only challenges the court's appointments sua sponte without notice and hearing. We conclude that the district court had authority to make the appointments sua sponte. Further, despite the lack of notice and hearing, we conclude that the appointments did not unfairly deprive Lana of a substantial right or just result in that neither appointee testified or presented evidence to the court against or in favor of either party in connection with the contempt motions. The order was within the court's well-established statutory authority, and was not a violation of Lana's right to due process.

Lana's first assignment of error is without merit.

### 2. ORDER DECLINING TO AWARD ATTORNEY FEES
#### FOR DAN'S CONTEMPT

Lana asserts that the district court erred by not awarding attorney fees as a result of Dan's contempt for failing to comply with the life insurance provision of the original paternity decree.

Costs, including reasonable attorney fees, can be awarded in a contempt proceeding. *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *overruled on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). Attorney fees in contempt cases fall under a court's inherent power to do all things necessary to enforce its judgment. *Wetovick v. County of Nance*, 279 Neb. 773, 782 N.W.2d 298 (2010). The district court's decision on a request for attorney fees is reviewed de novo on the record and will be affirmed in the absence of an abuse of discretion. *Carter v. Carter*, 276 Neb. 840, 758 N.W.2d 1 (2008).

Upon our review of the record, we find no abuse of discretion in the court's decision to not award attorney fees to Lana as a result of Dan's contempt. As noted by the court, Dan did maintain a life insurance policy since entry of the 2005 paternity decree. Following Lana's request for verification, Dan did alter the beneficiary designation to provide that Lana was an 80% beneficiary and Karsten a 20% beneficiary. However, because Dan failed to provide acceptable verification of

the policy to Lana showing that she is named irrevocable beneficiary, the court found Dan to be "technically" in contempt. Clearly, the court considered Dan's actions to be a relatively minor violation of the decree. The court's sanctions and requirement that Dan prove the existence of an appropriate life insurance policy naming Lana as irrevocable beneficiary prior to April 1, 2015 was an appropriate remedy.

Lana's second assignment of error is without merit.

### 3. FAILURE TO FIND DAN IN CONTEMPT REGARDING LANA'S SUMMER 2014 PARENTING TIME

Lana argues that the district court erred in not finding Dan in contempt for interfering with Lana's parenting time during summer 2014. Specifically, Lana contends that it was not until the court entered its Order Nunc Pro Tunc on July 30, 2014 that Dan became entitled to exercise his extended, second half summer parenting time, and that before said date, the provisions of the original decree controlled. Thus, Lana asserts that Dan's possession of Karsten prior to July 30, 2014 was in violation of the decree. Lana insists that Dan's claimed "confusion" regarding the operative order did not excuse his allegedly contemptuous behavior.

When a party to an action fails to comply with a court order made for the benefit of the opposing party, such act is ordinarily civil contempt, which requires willful disobedience as an essential element. "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *In re Interest of Zachary D. & Alexander D.*, 289 Neb. 763, 857 N.W.2d 323 (2015).

Outside of statutory procedures imposing a different standard, it is complainant's burden to prove civil contempt by clear and convincing evidence. Clear and convincing evidence means that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *Id.*

Upon our review, we find that the court did not abuse its discretion in finding that Lana failed to satisfy by clear and convincing evidence her burden to prove that Dan's actions amounted to willful disobedience, as necessary for a finding of contempt. We find no clear error in the district court's factual findings made in support of this determination. Based upon the "voluminous testimony" at the two hearings regarding the parties understanding as to the appropriate parenting time order to follow for the summer of 2014, the court concluded that "misunderstandings, conflicts and disagreements" occurred between the parties. This finding is supported by the record. The court further determined that Lana had in fact followed the February 25, 2014 order for a period of time until she "unilaterally refused" to follow the order when summer arrived. Again, the record supports this factual finding.

Finally, we note that the February 25, 2014 Modification Order clearly provided that each party was entitled to exactly one-half of the summer break as parenting time; with Lana having the first half of the summer in even years and the second half in odd years. Thus, for 2014, Dan was entitled to the second half of summer break. His parenting time from July 10 through the balance of summer break (albeit cut short by Lana) was not a violation of this order, which order was confirmed on July 24, following the various motions by the parties.

Lana failed to demonstrate, through clear and convincing evidence, that Dan's actions amounted to willful contempt. Therefore, the court did not abuse its discretion in finding that Dan's behavior was not willfully contemptuous.

Lana's third assignment of error is without merit.

## 4. ORDER FINDING LANA IN CONTEMPT AND ORDERING SANCTIONS

Lana assigns that the district court erred when it found Lana in contempt for intentionally and willfully preventing Dan from exercising his parenting time, for violating the court's July 24, 2014 Modification Order requiring both parties to facilitate counseling of Karsten through her denial of Dan's parenting time, and for failing to facilitate phone contact between Dan and Karsten as required by the modification order. Lana further assigns as error the resulting sanctions imposed by the court, the modification of previous orders, and ordering her to pay attorney fees.

### (a) Finding Lana in Contempt

Lana argues that there was insufficient evidence for the district court to establish that her actions amounted to intentional and willful contempt. Further, Lana asserts that the court failed to explain its contempt holdings against her with sufficient specificity, and that the original orders themselves were not specific enough for her to be found in willful contempt of their directives.

Following our review, we conclude that the court did not abuse its discretion in finding that Dan proved by clear and convincing evidence that Lana's actions amounted to willful disobedience, justifying a finding of contempt. We also reject Lana's argument that the prior orders of the court did not provide her with sufficient warning regarding required and prohibited behavior, thereby preventing the court from holding her in contempt for a violation of these provisions. See *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *overruled on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012).

With regard to Lana's interference with Dan's specific parenting times (October 22, October 24-27, and October 29, 2014), the prior orders were clear that these were times that Dan was entitled to parenting time and he was to pick up Karsten at school to commence his parenting time. The district court found from the evidence that Lana appeared personally at Karsten's school on these dates with no justifiable reason and for the sole purpose of interfering with these parenting times. We find no clear error in the district court's determination of these facts as they are supported by the record.

The court further concluded that the evidence supported a finding that Lana interfered with and refused parenting time to Dan on Halloween, Friday, October 31, 2014, her actions in denying Dan's parenting times violated the requirement that Lana help facilitate Karsten's counseling, and Lana failed to facilitate phone contact between Dan and Karsten. Again, we find no clear error in these factual determinations as they are supported by the record.

Lana argues that there was no provision in the prior orders which prevented her from being present at Karsten's school during Dan's pick up times and therefore she should not be held in contempt for such action. This arguments misses the point, however, which is that her presence at school on these occasions and her encouraging Karsten not to leave with her father interfered with

Dan's ability to exercise his parenting time. The prior orders clearly established Dan's right to parenting times on the days in question and that he was to pick up Karsten from school. Inherent in the prior orders is a requirement that Lana not interfere with Dan's parenting times. Further, the sanction imposing restrictions on Lana's presence at school on the days that Dan is set to pick Karsten up is a reasonable means of preventing similar future conduct by Lana of interfering with Dan's parenting time.

Lana also claims that the prior order requiring that both parties facilitate the counseling process was unclear and as such, she was not aware of what action was required of her. However, it was Lana's interference with Wednesday visitation that caused Karsten to miss counseling appointments, and the court found that this was an additional violation of the order. Lana's claim of ignorance of the fact that counseling was occurring during Dan's Wednesday visitation does not excuse a finding that her interference with such parenting time also interfered with the counseling.

Lana claims that the prior orders regarding telephone contact did not advise her that failure to answer Dan's phone calls was a violation. The original paternity decree states that "each of the parents shall have reasonable telephone contact when the child is in the others possession, and will allow the child to make reasonable telephone contact with the other parent." Later orders of the court also established that "while the minor child is in the possession of the other party during the summer break, the non-possessor party shall have reasonable phone contact made accessible to them with the minor child not to consist of more than one phone call per day." Together, it is clear from these provisions that the possessory parent is to facilitate the other parent's ability to communicate with Karsten by telephone. Lana claims that she could not force Karsten to speak with her father, but the record indicates that she did not even attempt to facilitate such communication over long periods of time.

We conclude that the prior orders provided clear direction for required and prohibited behavior such that Lana's violations as determined by the court allowed for a finding of contempt. The district court did not abuse its discretion in finding that Lana's actions and inactions were willful and contemptuous and supported a finding of contempt.

(b) Imposition of Sanctions

Lana challenges various aspects of the sanctions imposed by the court and also argues that the sanctions themselves were not sufficiently clear. Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit, to compel obedience to orders and decrees made to enforce such rights, and to administer the remedies to which the court has found the parties to be entitled. *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *overruled on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). Contrary to Lana's argument, we conclude that the court's contempt order sanctions were appropriate and were sufficiently specific to guide her compliance.

The sanctions were consistent with the purpose of the prior orders; namely, to foster the best interests of Karsten by creating a parenting time structure that allows both parties to have a relationship with her while minimizing confrontations. The purge provisions are reasonable means to allow the fostering of Karsten's relationship with her father, which had been hampered by

Lana's numerous interferences with Dan's parenting time; to ensure that Lana is held accountable; and to protect Karsten from further confrontations between her parents.

### (c) Modification of Prior Orders

Lana argues that the court improperly modified the prior orders by its imposition of sanctions without affording her due process. In support of her argument, she relies upon *Smeal Fire Apparatus Co. v. Kreikemeier, supra*, for the proposition that a party must be provided notice and an opportunity to be heard if a court is considering a modification of an underlying decree as an equitable sanction for contempt. We conclude that this proposition is not applicable in this case. The requirements of the purge plan that either prohibit or require certain action on Lana's part were not permanent modification of prior orders, but rather, were requirements for Lana to purge herself of contempt. Further, the actions were limited to the time frame between the entry of the order and July 31, 2015; the date her jail sentence was set to begin in the event she failed to abide by the terms of the purge plan. Further, the additional parenting time awarded to Dan of every weekend from the entry of the order on February 18, 2015 through May 15, 2015, was clearly designed to compensate him for the denial of his parenting time since August 2014.

To the extent that Lana argues that these sanctions were a violation of due process, this assertion is without merit. Lana had notice of the contempt proceedings and fully participated in the contempt hearings. It was clear that interference with Dan's parenting time was fully litigated and Lana cannot claim to be surprised by the sanctions imposed upon her.

### (d) Award of Attorney Fees to Dan's Attorney

Lastly, Lana challenges the court ordering her to pay $1,500 in attorney fees directly to Dan's attorney. Costs, including reasonable attorney fees, can be awarded in a contempt proceeding. *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *overruled on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). Attorney fees in contempt cases fall under a court's inherent power to do all things necessary to enforce its judgment. *Wetovick v. County of Nance*, 279 Neb. 773, 782 N.W.2d 298 (2010).

The court did not abuse its discretion in finding that Lana's numerous and clear violations of prior orders justified the sanction of an award of attorney fees. Upon our review, we find that the award of $1,500 for the benefit of Dan to be paid to his attorney was not an abuse of discretion. Therefore, we will not disturb the court's ruling on appeal.

Lana's last assignment of error is without merit.

### VI. CONCLUSION

Upon our review, we find that the district court did not abuse its discretion in appointing a guardian ad litem and attorney for the protection of the minor child, choosing not to award Lana attorney fees as a result of Dan's contempt, finding that Dan was not in contempt for the alleged interference with Lana's 2014 summer parenting time, and finding Lana in contempt and imposing appropriate sanctions as a result of her intentional and willful interference with Dan's parenting time and related violations of the court's prior orders. Accordingly, we affirm.

AFFIRMED.